**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Stacey LAWRENCE Sr., and Tobitha Lawrence, Appellees.**

No. S–8915.

Supreme Court of Alaska.

July 13, 2001.

Paul W. Waggoner, Anchorage, and Earl M. Sutherland, Reed McClure, Seattle, for Appellant.

Jonathon A. Katcher, Pope & Katcher, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. *INTRODUCTION*

Stacey Lawrence, Jr. was seriously injured in a car accident caused by an underinsured motorist. Lawrence exhausted the "Each Person" limits of the uninsured/underinsured motorist (UM/UIM) provisions of his family's State Farm Mutual Automobile Insurance Co. policies. His parents then sought to collect separate policy limits under the "Each Accident" provision of their UM/UIM provisions, for both negligent infliction of emotional distress (NIED) and punitive damages for the intentional act of the underinsured tortfeasor. On motions for summary judgment, the superior court ruled that (1) the Lawrence parents' NIED claims qualify for separate policy limits; and (2) the Lawrences' UM/UIM provisions provide coverage for punitive damages against an underinsured tortfeasor. Because State Farm has waived all of the arguments that could show that the Lawrence parents do not qualify for separate policy limits under the terms of their UM/UIM provisions, we affirm the superior court's ruling on the separate policy limits issue. Because the Lawrences' liability policies cover them for punitive damages for which they themselves may be liable, we affirm the superior court's ruling on the punitive damages issue.

## II. *FACTS AND PROCEEDINGS*

### A. *Facts*

#### 1. *The accident and its aftermath*

The underlying facts of this case are not in dispute. Stacey Lawrence, Jr. (Stacey Jr.) was involved in a car accident at an intersection in Anchorage. Tell Wohltmann, who is not a party to this action, ran a stop sign and crashed into the car that Stacey Jr. was driving. Wohltmann admitted that he was speeding as he drove through the intersection, and stated that he did not want to stop at the stop sign because he was suicidal.

Stacey Jr. was taken to the hospital in an ambulance. He suffered severe injuries as a result of the accident, including traumatic brain injury and a ruptured spleen and diaphragm.

Neither of Stacey Jr.'s parents was present at the accident scene. Tobitha Lawrence, Stacey Jr.'s mother, was at a bookstore several blocks away; his father, Stacey Lawrence, Sr. (Stacey Sr.), was also elsewhere. While Tobitha did encounter the ambulance that carried her son after she left the bookstore, she did not know at the time that her son was in the ambulance.

Soon after the accident, Tobitha received a phone call from a nurse who said that Stacey Jr. had been in an accident. Tobitha's sister then drove her to the hospital. Around the same time, Stacey Sr. was told by a friend that Stacey Jr. had been in accident; Stacey Sr. then drove to the hospital himself.

When Tobitha arrived at the hospital, she was told that Stacey Jr. was "very sick." She was not allowed to see him. After Stacey Sr. arrived at the hospital, he saw his son on a gurney. Tobitha and Stacey Sr. waited in the hospital waiting area while their son was in surgery.

After the surgery, a surgeon came into the waiting area and told the Lawrence parents that Stacey Jr. was in a coma, and that he would probably not wake up from it. Tobitha fainted upon hearing this.

As a result of her reaction to the events, Tobitha herself was admitted to the hospital. She was diagnosed as suffering post-traumatic stress disorder, anxiety, and headaches,

and was prescribed sedatives. The record contains no indication that Stacey Sr. suffered any physical illness as a result of these events.

### 2. *The insurance policies*

State Farm was the insurer for both Wohltmann and the Lawrences. Wohltmann's liability policy provided "Each Person" policy limits of $100,000, plus supplemental payments of interest, costs, and attorney's fees. The Lawrences had three State Farm policies, one for each of their cars. Each policy contained identical terms and provisions, including UM/UIM "Each Person" limits of $50,000 and UM/UIM "Each Accident" limits of $100,000.

### B. *Proceedings*

The Lawrences originally brought suit against Wohltmann, seeking damages in excess of $300,000, plus attorney's fees and costs. Stacey Jr. sought damages for his injuries; his parents sought damages for NIED. Both Stacey Jr. and his parents also sought punitive damages for Wohltmann's "reckless and outrageous" conduct. The Lawrences later amended their complaint to add State Farm as a defendant.

The Lawrences initially sought a declaration that Wohltmann's policy provided him with "Each Person" liability coverage limits for the parents' NIED claims, in addition to the "Each Person" limits for Stacey Jr.'s bodily injury claims. As such, the Lawrences argued that Wohltmann's "Each Accident" limits applied. State Farm disputed this contention.

The parties then entered into a Stipulation and Order, pursuant to which Stacey Jr. settled his claims against Wohltmann for one "Each Person" policy limit, plus supplemental payments. In addition, Stacey Jr. recovered the "Each Person" policy limits on each of the UM/UIM provisions in the Lawrences'

policies, thereby exhausting the "Each Person" policy limits of both Wohltmann's and the Lawrences' policies.

As part of the stipulation, the Lawrence parents agreed to dismiss their NIED claims against Wohltmann. The parents and State Farm agreed, however, that the parents could pursue their NIED claims against the Lawrences' own State Farm UM/UIM provisions.

The Lawrence parents then moved for declaratory judgment on two issues: (1) whether their NIED claims qualify for policy limits under their UM/UIM provisions that are separate from the policy limits received by their son; and (2) whether their UM/UIM provisions cover them for the punitive damages of an underinsured motorist. The parents argued that both questions should be answered in the affirmative. State Farm brought a cross-motion for summary judgment on both of these issues, arguing that both questions should be answered in the negative.

After oral argument, Superior Court Judge Brian C. Shortell ruled in favor of the Lawrences on both issues and awarded them attorney's fees and costs. State Farm appeals.[1]

### III. *STANDARD OF REVIEW*

 This appeal raises questions of contract interpretation and statutory construction. We substitute our own judgment on questions pertaining to the interpretation of a contract.[2] We resolve questions of statutory construction *de novo* by applying our independent judgment.[3] In doing so, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

### IV. *DISCUSSION*

This appeal presents two issues: (1) whether the superior court correctly ruled that the Lawrence parents' NIED claims qualify for UM/UIM policy limits that are

---

1. After this appeal is decided, remaining factual disputes will be referred to arbitration.

2. *See Alaska Hous. Fin. Corp. v. Salvucci*, 950 P.2d 1116, 1119 (Alaska 1997).

3. *See Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 512 (Alaska 1998) (citing *Deal v. Kearney*, 851 P.2d 1353, 1356 n. 4 (Alaska 1993)).

4. *Id.* (internal quotation marks omitted) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

separate from the UM/UIM policy limits that Stacey Jr. received for his injuries; and (2) whether the superior court correctly ruled that the UM/UIM provisions in the Lawrence parents' policies cover them for the punitive damages of an underinsured motorist. Both issues present us with questions of first impression.

A. *The Superior Court Did Not Err in Ruling that the Lawrence Parents' NIED Claims Qualify for Separate Policy Limits.*

The superior court ruled that the Lawrence parents' NIED claims qualify for policy limits that are separate from the policy limits Stacey Jr. received for his bodily injuries. We agree.

■ The UM/UIM provision of the Lawrences' policies provide that

> The amount of coverage for *bodily injury* is shown on the declarations page under "Limits of Liability–U–Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this bodily *injury*. Under "Bodily Injury—Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

The Lawrences' policies define "bodily injury" as "bodily injury to a *person* and sickness, disease or death which results from it."

In *Crabtree v. State Farm Insurance Co.*,[5] the Supreme Court of Louisiana interpreted State Farm policy language that is virtually identical to the language at issue here.[6] That case involved a husband who was driving his motorcycle and his wife who followed

him in her car.[7] An oncoming car crossed the center line and collided head on with the husband.[8] The wife witnessed the accident, went to help her husband, and found that one of his legs was "almost completely severed below the knee."[9] In deciding whether the wife's mental anguish claim qualified for policy limits that are separate from those that her husband received for his injuries, the *Crabtree* court held that two requirements must be met in order for separate limits to apply: (1) the wife must have suffered "bodily injury"; and (2) the wife must have suffered that bodily injury "in the same accident" as her husband.[10] We agree with this approach. Therefore, in order for the Lawrence parents to be eligible for separate policy limits, they must demonstrate that (1) they suffered "bodily injury"; and (2) they were injured "in the same accident" as Stacey Jr.

1. *State Farm has waived its arguments that the Lawrence parents do not qualify for separate policy limits because they did not suffer "bodily injury" and because they fail to meet the policies' requirement of having been "in the same accident" as their son.*

■ State Farm argues that the emotional distress claimed by the Lawrence parents does not constitute "bodily injury." State Farm also suggests that the Lawrence parents do not qualify for separate policy limits because they do not meet the policies' requirement of having been "in the same accident" as their son.

But State Farm has waived both of these arguments because it failed to adequately raise them below.[11] State Farm did not argue to the superior court that the emotional distress claimed by the Lawrence parents

---

5. 632 So.2d 736 (La.1994).

6. *See id.* at 739 (quoting the policy language).

7. *See id.* at 738.

8. *See id.*

9. *Id.*

10. *See id.* at 745.

11. *See Chijide v. Maniilaq Ass'n*, 972 P.2d 167, 173 (Alaska 1999) (citing *Revelle v. Marston*, 898 P.2d 917, 927 (Alaska 1995)).

does not constitute bodily injury. Therefore, this argument has been waived for purposes of this appeal.[12]

While State Farm did assert to the superior court that the Lawrence parents were not "in the same accident" as their son, it did so in the context of arguing that the Lawrence parents' injuries "resulted from" their son's injuries. Nowhere did State Farm clearly argue to the superior court that the Lawrence parents failed to meet the "same accident" requirement of their policies. As such, this argument has also been waived for purposes of this appeal.[13]

> 2. *Even if the Lawrence parents' injuries "result[ed] from" the injury to their son, this would not compel the conclusion that the Lawrence parents fail to qualify for separate policy limits.*

■ State Farm argues that the Lawrence parents cannot recover separate policy limits because their injuries "result[ed] from" the injuries to their son. The Lawrences' policies state that under the "Each Person" limits, State Farm will pay "damages due to *bodily injury* to one *person*." Included in *"bodily injury* to one *person*" is "all injury and damages to others resulting from this *bodily injury*." State Farm argues that because the Lawrence parents' injuries "resulted from" the bodily injury to their son, single "Each Person" limits apply. We disagree.

Even if the Lawrence parents' injuries *did* result ·from their son's bodily injury, this would not necessarily lead to the conclusion that the parents' injuries do not qualify for policy limits separate from those that their son received. In *Crabtree*, the Supreme Court of Louisiana rejected State Farm's argument that a wife could not recover separate policy limits for the mental anguish that

she claimed "resulted from" the injuries suffered by her husband.[14] The Louisiana court indicated that State Farm's interpretation, which would read the "each person" limit as preventing coverage of a second person whose bodily injury arguably "resulted from" the injuries to the first, disregards "the clear and explicit language defining the aggregate coverage for 'Each Accident' as '*all* damages due to *bodily* injury to two or more persons in the same accident.' "[15]

Given the problematic consequences of holding that single policy limits *necessarily* apply if one person's injury "results from" the bodily injury of another, the *Crabtree* court construed State Farm's policy language to mean that the "Each Person" limit applies if only one person suffered "bodily injury" in an accident.[16] On the other hand, separate limits apply to two or more persons who suffer "bodily injury" if those persons were injured "in the same accident."[17]

We find the Louisiana Supreme Court's reasoning to be persuasive. Given the wording of State Farm's "Each Accident" provision, it is objectively reasonable for State Farm insureds to expect that two or more persons who suffer bodily injury in the same accident would be entitled to separate policy limits. Since we honor the objectively reasonable expectations of insureds regarding the terms of insurance contracts,[18] we reject State Farm's interpretation of the policy language at issue.

> 3. *The Lawrences are not subject to single policy limits on the grounds that the Lawrence parents' claims are akin to claims for loss of consortium.*

■ State Farm also argues that the individual "Each Person" limits apply because the Lawrence parents' claims are essentially

---

12. *See id.* (citing *Revelle,* 898 P.2d at 927).

13. *See id.* (citing *Revelle,* 898 P.2d at 927).

14. *See* 632 So.2d at 740.

15. *Id.*

16. *See id.*

17. *See id.*

18. *See Jones v. Horace Mann Ins. Co.,* 937 P.2d 1360, 1362 n. 3 (Alaska 1997).

claims for loss of consortium. This argument is unpersuasive.

Other courts have rejected arguments equating emotional distress and loss of consortium.[19] We agree with those courts. Unlike claims for loss of consortium, claims for emotional distress concern injuries that the claimants have suffered directly, rather than derivative injuries that resulted from an injury to another.[20]

Even if we considered the Lawrence parents' claims to be akin to claims for loss of consortium, State Farm would not necessarily prevail on the separate policy limits issue. As noted above, the dispositive questions in interpreting this aspect of the Lawrences' policies are whether the Lawrence parents suffered "bodily injury," and whether such "bodily injury" was suffered "in the same accident" that injured their son.[21] State Farm has waived its arguments pertaining to these questions.[22]

Because State Farm has waived the arguments that, if successful, would show that the Lawrence parents do not qualify for separate policy limits under the terms of the UM/UIM provisions in their policies, we affirm the superior court's ruling that the Lawrence parents' claims of NIED qualify for policy limits separate from those that their son received for his bodily injuries.[23]

B. *The Lawrences' State Farm Policies Cover Them for Punitive Damages that They Are Legally Entitled to Collect from an Underinsured Motorist.*

■ The superior court ruled that the UM/UIM provisions in the Lawrences' policies cover them for punitive damages that they would be legally entitled to collect from an underinsured motorist. We agree.

1. *Because the Lawrences' liability policies provide coverage for punitive damages for which the Lawrences themselves may be liable, the Lawrences' UM/UIM provisions provide coverage for punitive damages incurred by an underinsured tortfeasor.*

a. *In Alaska, automobile insurance companies must provide UM/UIM coverage that mirrors an insured's liability coverage.*

■ In *State Farm Mutual Automobile Insurance Co. v. Harrington*,[24] we considered AS 21.89.020(c), which describes the UM/UIM coverage that insurance companies offering automobile liability insurance must offer to insureds.[25] We stated that "the evident purpose of section 020(c)(1) is to provide for the insured, as an injured claimant, the same benefit level as that provided by the insured to those asserting claims against the insured."[26] Therefore, automobile insurance companies must offer insureds UM/UIM coverage that mirrors the insureds' liability

19. *See, e.g., Pekin Ins. Co. v. Hugh*, 501 N.W.2d 508, 511 (Iowa 1993); *Treichel v. State Farm Mut. Auto. Ins. Co.*, 280 Mont. 443, 930 P.2d 661, 665 (1997); *Wolfe v. State Farm Ins. Co.*, 224 N.J.Super. 348, 540 A.2d 871, 873 (App.Div. 1988).

20. *See Pekin*, 501 N.W.2d at 511.

21. *See supra* Part IV.A.2.

22. *See supra* Part IV.A.1.

23. Of course, whether the Lawrences have in fact suffered compensable bodily injury is a question of fact that remains to be determined in arbitration.

24. 918 P.2d 1022 (Alaska 1996).

25. AS 21.89.020 is entitled "REQUIRED MOTOR VEHICLE COVERAGE." Section (c) provides, in relevant part, that

An insurance company offering automobile liability insurance in this state for bodily injury or death shall, initially and at each renewal, offer coverage prescribed in AS 28.20.440 and 28.20.445 or AS 28.22 for the protection of the persons insured under the policy who are legally entitled to recover damages for bodily injury or death from owners or operators of uninsured or underinsured motor vehicles. The limit written may not be less than the limit in AS 28.20.440 or AS 28.22.101. Coverage required to be offered under this section must include the following options:

(1) policy limits equal to the limits voluntarily purchased to cover the liability of the person insured for bodily injury or death....

26. *Harrington*, 918 P.2d at 1026.

coverage.[27] If State Farm has failed to provide such coverage, its UM/UIM provisions will be reformed to conform with the statutory requirements.[28] Therefore, if the Lawrences' liability policies cover them for punitive damages for which they may be liable, the UM/UIM provisions in their policies must also cover them for the punitive damages that they are legally entitled to collect from an underinsured tortfeasor.[29]

 b. *The Lawrences' liability policy covers them for punitive damages for which they may be liable.*

■ The Lawrences' liability policies do not specifically exclude coverage for punitive damages. Rather, they provide that State Farm will "pay damages which an *insured* becomes legally liable to pay because of ... *bodily injury* to others." Because a person may become legally liable for punitive damages if that person acts outrageously or with reckless indifference to the interests of another,[30] we hold that the Lawrences' liability policies provide coverage for the Lawrences' own punitive damages.

Our previous decision in *Providence Washington Insurance Co. of Alaska v. City of Valdez*[31] lends support to this conclusion. In that case, we considered policy language providing that the insurance company would "pay ... all sums which the insured shall become legally obligated to pay as damages."[32] Because the policy did not specifically exclude coverage for punitive damages,

we held that the policy provided such coverage.[33]

■ At the very least, the relevant provision is ambiguous with regard to punitive damages. We interpret ambiguities in insurance contracts in favor of the insured.[34] For this additional reason, we hold that the Lawrences' liability policies cover them for punitive damages for which they themselves may be legally liable.

Because the Lawrences' liability policies include coverage for punitive damages, AS 21.89.020(c)(1) and *Harrington* require the conclusion that the UM/UIM provisions in the Lawrences' policies include coverage for punitive damages as well. We accordingly hold that the superior court correctly ruled that the UM/UIM provisions in the Lawrences' policies include coverage for punitive damages incurred by an underinsured tortfeasor.

 2. *The Lawrences' UM/UIM policies suggest that they cover the Lawrences for punitive damages that they would be legally entitled to recover from an underinsured tortfeasor.*

In addition, the language of the Lawrences' UM/UIM policies also suggests that the Lawrences are covered for punitive damages that they would be legally entitled to collect from an underinsured tortfeasor.

The UM/UIM provisions of the Lawrences' policies state:

Two questions must be decided by agreement between the *insured* and us:

---

27. While such UM/UIM coverage may be waived in writing by the insured, *see* AS 21.89.020(e), the Lawrences gave no such waiver in the instant case. Because such coverage was not waived, State Farm must provide it. *See Harrington*, 918 P.2d at 1025.

28. *See Harrington*, 918 P.2d at 1025.

29. This conclusion is buttressed by a comparison of AS 21.89.020(c), which *Harrington* is based upon, and the broader language of AS 28.20.440. In *Lavender v. State Farm Mutual Auto. Ins. Co.*, 828 F.2d 1517 (11th Cir.1987), the Eleventh Circuit distinguished between a Mississippi statute that required coverage of accidents with uninsured motorists *"for* bodily damage" (similar to AS 21.89.020(c)) and an Alabama statute requiring coverage *"because* of bodily damage" (similar to AS 28.20.440). The court said that the Alabama statute extended uninsured motorist coverage over punitive damages, but that the Mississippi statute did not. *Id.* at 1518. With-

out expressly adopting the analysis in *Lavender*, we recognize that no such distinction is necessary in this case because our statutes contain both the "for bodily damage" (AS 21.89.020(c)) and "because of bodily damage" (AS 28.20.440(a)(3)) formulations with regard to uninsured motorists. And where two insurance statutes partially overlap, the statute requiring broader coverage governs. *See Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 522 (Alaska 1998).

30. *See* AS 09.17.020(b).

31. 684 P.2d 861 (Alaska 1984).

32. *Id.* at 862 (quoting the policy language).

33. *See id.* at 862–63.

34. *See Grace v. Insurance Co. of N. Am.*, 944 P.2d 460, 467 n. 15 (Alaska 1997) (citing *U.S. Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979)).

1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle*; and

2. If so, in what amount?

This provision makes no distinction between compensatory and punitive damages. Because the Lawrences may be legally entitled to recover punitive damages from an underinsured motorist, this aspect of the Lawrences' UM/UIM policies suggests that it covers the Lawrences for such damages.

Furthermore, punitive damages are specifically excluded in the Medical Payments Coverage sections of the Lawrences' policies,[35] but are not specifically excluded in the UM/UIM sections. As the Lawrences correctly argue, "[t]his exclusion of punitive damages only in the context of medical payments clearly suggests that punitive damages are covered in the [UM/UIM] ... sections of the policy." We have held that insureds' objectively reasonable expectations regarding the terms of an insurance contract will be honored.[36] Given that punitive damages are excluded in the medical payments section, but not in the UM/UIM section of the policy, it is objectively reasonable for State Farm insureds to expect that State Farm's UM/UIM provision would cover them for punitive damages caused by an underinsured tortfeasor. This consideration also provides strong support for our conclusion that the Lawrences' UM/UIM provisions provide coverage for punitive damages.

### 3. *State Farm's policy arguments are unpersuasive.*

State Farm argues that policy considerations favor its position that punitive damages are not covered by the policy. We have stated that the purpose of punitive damages is to punish and deter;[37] State Farm argues that punitive damages should not be available here because it has engaged in no wrongdoing, and an award of punitive damages would not punish the tortfeasor or deter others like him. This argument is unpersuasive.

Under the Lawrences' liability coverage, there is no question that State Farm would be liable for punitive damages awarded against the Lawrences.[38] But coverage for the Lawrences' liability for punitive damages is no different analytically from coverage for an uninsured motorist's intentional or reckless torts. Thus, State Farm's argument proves too much. Its suggestion that the Lawrences' liability policies should also not provide coverage for punitive damages is clearly wrong.

The question here ultimately turns not on policy but on what the parties contracted for. The Lawrences essentially bought liability coverage for underinsured motorists who injured them. The terms of that coverage included protection for punitive damages awards from an underinsured motorist. Since that is the coverage they contracted for, there is no reason that they should not obtain it.

In sum, the Lawrences' UM/UIM provisions provide coverage for punitive damages because the Lawrences' liability policies provide such coverage, because the Lawrences' policies suggest that they include coverage for the punitive damages of an underinsured tortfeasor, and because public policy does not forbid this result.[39]

## V. CONCLUSION

State Farm has waived its arguments that the Lawrence parents do not qualify for sep-

---

**35.** This section provides that if State Farm and the insured cannot agree on an amount due, the claim shall be decided by arbitration upon written request of one of the parties. It goes on to state that "[t]he arbitrators shall not award punitive damages or other noncompensatory damages."

**36.** *See Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1362 n. 3 (Alaska 1997).

**37.** *See Providence Wash. Ins. Co. v. City of Valdez*, 684 P.2d 861, 863 (Alaska 1984).

**38.** *See supra* Part IV.B.1.b.

**39.** State Farm advances other policy arguments against allowing an award of punitive damages in this case. For example, it argues that punitive damages should not be allowed here because this would lead to higher insurance prices for people like the Lawrences, and that allowing punitive damages here is akin to allowing them against the estate of a deceased tortfeasor. We reject these arguments.

arate policy limits because the Lawrence parents did not suffer "bodily injury" and because the Lawrences do not meet their policies' requirement of having been "in the same accident" as their son. Accordingly, we AFFIRM the superior court's ruling that the Lawrence parents' NIED claims qualify for policy limits separate from those received by their son. Because the Lawrences' liability policies cover them for their own punitive damages, because the policies suggest that they cover the punitive damages of an underinsured tortfeasor, and because public policy does not forbid this result, we also AFFIRM the superior court's ruling that the Lawrences' UM/UIM provisions provide coverage for the punitive damages of an underinsured tortfeasor.[40]

---

40. Because we affirm both of the superior court's rulings in favor of the Lawrences, we also affirm the superior court's award of attorneys' fees and costs to the Lawrences.