258 P.3d 833 (2011)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner/Cross-Respondent,
v.
Larry HOULE, Sunnie Houle, Graham Houle, and Marshall Houle; and Brian Noel, Lynn Noel, Laura Noel, and Sarah Noel, Respondents/Cross-Petitioners.
Nos. S-13645, S-13855.
Supreme Court of Alaska.
August 26, 2011.
*834 David S. Carter, Hughes, Gorski, Seedorf, Odsen, & Tervooren, LLC, Anchorage, for Petitioner/Cross-Respondent.
Richard E. Vollertsen, and Christopher J. Slottee, Atkinson, Conway, & Gagnon, Anchorage, for Respondents/Cross-Petitioners.
Before: CARPENETI, Chief Justice, FABE, CHRISTEN, and STOWERS, Justices.

OPINION
CARPENETI, Chief Justice.

I. INTRODUCTION
At issue in this case are the coverage limits associated with underinsured motorist (UIM) insurance and whether coverage provided under disputed insurance policies complies with the requirements of Alaska insurance statutes. The respondent families hold UIM policies. They allege that they have suffered emotional distress and loss of consortium as a result of a collision that killed one family's child and severely injured the other family's child. The insurer accepts that the policyholders incurred damages. However, it contends that the families have already exhausted the coverage limits available to them under the UIM policies because the family members seeking damages were not "in" the fatal collision.
The superior court concluded that the families had not exhausted their UIM coverage under Alaska insurance statutes and reformed the insurance policies to allow the emotional distress claims to proceed to arbitration. The superior court dismissed the families' loss of consortium claims as outside the coverage of the policies. Because we conclude that the families have exhausted the coverage limits available under their policies and that these policies are consistent with statutory requirements, we reverse the superior court's decision to reform the policies. Because coverage limits are exhausted, we decline to consider whether loss of consortium is covered under the policies.

II. FACTS AND PROCEEDINGS
This is a dispute over insurance coverage arising from an automobile accident in which Nolan Houle was killed and Caroline Noel sustained significant injuries. The accident took place in August 2001 near the intersection of O'Malley Road and New Seward Highway in Anchorage. Nolan and Caroline were passengers in a car driven by Ryan Schubert. Schubert, who is not a party in this case, turned left in front of a bus that slammed into his car. The parties do not *835 dispute that the injuries in this case resulted from Schubert's driving and that the families' claims triggered coverage under Schubert's liability insurance policy.
Schubert was insured by State Farm Mutual Automobile Insurance Company. Schubert's liability policy covered claims up to a per-person limit of $100,000 and a per-accident limit of $300,000.[1] Pursuant to Schubert's liability policy, State Farm paid $100,000 to Caroline Noel and $100,000 to the estate of Nolan Houle, exhausting two separate per-person limits and two-thirds of the sum available for a single accident. Pursuant to the same liability policy, State Farm also made payments to Caroline's parents and Nolan's parents based on claims that, according to the families, included negligent infliction of emotional distress (NIED). Together these payments exhausted the $300,000 per-accident limit of Schubert's liability policy.
The Houle family had three automobile insurance policies with State Farm. Each policy provided underinsured motorist (UIM) coverage to the members of the Houle household up to a per-person limit of $250,000 and a per-accident limit of $500,000. The Noel family also had three State Farm automobile insurance policies subject to the same policy language. Each policy provided UIM coverage to members of the Noel family up to a per-person limit of $100,000 and a per-accident limit of $300,000. It is undisputed that the Houle and Noel families' UIM policies were "stackable," as that term is commonly understood.[2] By stacking, the Houle family effectively had UIM coverage up to a per-person limit of $750,000 and a per-accident limit of $1.5 million, while the Noel family's limits were effectively $300,000 per person and $900,000 per accident. Further, there is no dispute that coverage under these UIM policies was triggered because, as a result of the August 2001 accident, members of the Houle and Noel families suffered damages that exceeded the coverage available under the Schubert liability policy.[3]
Pursuant to the Houle and Noel UIM policies, Caroline Noel, the estate of Nolan Houle, and the respondent family members presented State Farm with claims for various medical and economic costs resulting from the August 2001 accident, as well as punitive damages. State Farm paid $750,000 on account of Nolan Houle's UIM coverage and $300,000 on account of Caroline Noel's UIM coverage. These payments exhausted the stacked per-person limits of the families' UIM policies. But State Farm's payments did not exhaust the aggregate per-accident limits of the Houle and Noel UIM policies.[4]
That is the origin of this dispute. The respondent family members believed that they were entitled to additional coverage *836 based on the claims they had filed with State Farm. In other words, they believed that the injuries Caroline's and Nolan's parents and siblings had suffered as a result of the August 2001 accident triggered UIM coverage subject to separate per-person limits for each injured family member. But State Farm refused to make additional payments under the UIM policies, believing that any injuries suffered by the respondent family members were subject to the single per-person limits triggered by Caroline's and Nolan's injuries. Thus, State Farm filed an action for declaratory judgment, asking the superior court to declare that the Noel and Houle families' coverage limits had been exhausted. The families sought a stay of the declaratory judgment action and appointment of an arbitrator to hear their claims and resolve any factual disputes.
The superior court carefully addressed three rounds of summary judgment and several other motions concerning procedure and discovery. It responded to new developments in the governing law, including the release of our opinion in State Farm Mutual Automobile Insurance Co. v. Dowdy (Dowdy II).[5] Among other issues, the superior court considered which of the parents' and siblings' claims constituted "bodily injury" under the UIM policy's broad definition of this term; it concluded that the policy covered negligent infliction of emotional distress but not loss of consortium. The superior court later concluded that the families had not exhausted their UIM coverage under Alaska insurance statutes and reformed State Farm's insurance policy to allow the negligent infliction of emotional distress claims to proceed to arbitration.
State Farm then filed a petition for review, arguing that its UIM policy is consistent with the requirements of Alaska statutes and should not have been reformed. We granted the petition and authorized a cross-petition. The families cross-petitioned, urging us to address their loss of consortium claims and to reconsider our ruling in Dowdy II. We have considered the issues raised by both petitions.

III. STANDARD OF REVIEW
This case "involves a ruling on summary judgment and presents a question of law. We therefore apply a de novo standard of review, `adopting the rule of law that is most persuasive in light of precedent, reason, and policy.'"[6] "We also review de novo as a question of law the interpretation of insurance policy language."[7]

IV. DISCUSSION
Taken together, State Farm's petition and the families' cross-petition ask us whether Nolan Houle's and Caroline Noel's family members are entitled to separate per-person coverage under the terms of State Farm's UIM policies, whether the terms of the policies are consistent with the requirements of Alaska insurance statutes, whether the families' loss of consortium claims and emotional distress claims should be treated differently under the governing rules, and whether our decision in Dowdy II governs the outcome of the case.
The parties do not dispute that the Houle and Noel family members incurred damages as a result of the August 2001 car accident. They disagree about whether the injuries to these family members triggered per-person limits separate from Nolan Houle's and Caroline Noel's per-person limits.
State Farm argues that the applicable coverage limits have been exhausted and that the UIM policies are consistent with statutory requirements. According to State Farm, any covered injuries incurred by Nolan's and Caroline's family members are covered only under the per-person limits paid in respect of Nolan Houle and Caroline Noel.
The family members assert that separate per-person limits should apply to their claims. They also argue that while the superior court properly reformed the policy to *837 cover the parents' emotional distress claims, there is no principled reason to distinguish the emotional distress claims from the loss of consortium claims. According to the families, all of these claims should proceed to arbitration.
Dowdy II governs the interpretation of the UIM policy language in this case. We decline to reconsider the ruling of that case and conclude that coverage has been exhausted under the terms of the Houles' and Noels' UIM policies. Because coverage has been exhausted, we need not consider whether loss of consortium claims could satisfy the policies' definition of "bodily injury." Reformation of the policies is unnecessary because the terms of the policies are consistent with statutory requirements.[8]

A. The UIM Policies Do Not Provide Separate Per-Person Coverage For The Family Members' Emotional Distress Claims.
In addressing the proper interpretation of an insurance policy, we look to "(1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[9] Because "an insurance policy is a contract of adhesion,"[10] we "construe grants of coverage broadly and interpret exclusions narrowly."[11] We recently explained:
Insurance policies are construed in such a way as to honor a lay insured's reasonable expectations. Policy language is construed in accordance with ordinary and customary usage. Ambiguities in . . . insurance policies are to be construed most favorably to an insured, but ambiguities only exist when there are two or more reasonable interpretations of particular policy language.[[12]]
These rules of construction provide a general guide for interpreting disputed policy language.
Notably, we have already applied these rules of construction to the policy language at issue in this case. State Farm's UIM policy provides in relevant part:
The amount of coverage for bodily injury is shown on the declarations page under "Limits of LiabilityUIBodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person includes all injury and damages to others resulting from this bodily injury. Under "Bodily InjuryEach Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
When we refer to "per-person" and "per-accident" limits in State Farm's UIM policy, we refer to the parameters established for "Each Person" and "Each Accident" in the passage above.
In both Lawrence and Dowdy II, we construed basically the same policy language that is before us today.[13] In both of these cases, family members who suffered emotional distress as a result of an accident sought separate per-person coverage under the terms of State Farm's UIM policy.[14] In *838 other words, not only have we had occasion to construe the same language that is in dispute here; we have construed the same language in light of similar facts.
In Lawrence, we identified two requirements that must be met in order for separate coverage limits to apply under the terms of the policy: (1) the claimant must have suffered "bodily injury"; and (2) that injury must have been suffered "in the same accident."[15] But we did not reach the merits of the coverage dispute in Lawrence.[16] When we took up the issue in Dowdy II, we explained that "the `accident' referred to by the policy . . . is, of course, the collision between the vehicles."[17] We concluded that "`injury in the same accident' cannot reasonably be construed to refer to injuries that result from viewing a dead or injured person away from an accident scene."[18] In light of our interpretation of the phrase "in the same accident," we concluded that the Dowdys' emotional distress did not trigger separate per-person coverage limits.[19]
Dowdy II left open the possibility that some bystander emotional distress claims could meet the "in the same accident" requirement.[20] Asa and Barbara Dowdy saw their daughter's body at the hospital at least three hours after the collision that killed her; the parents were "miles away" from the scene of the accident when the collision took place.[21] Because the Dowdys were "far removed" from the accident involving their daughter, we concluded that they could not satisfy the "in the same accident" requirement.[22]
In this case, none of Nolan Houle's or Caroline Noel's family members were vehicle occupants or pedestrians in the collision that took place at the intersection of O'Malley Road and New Seward Highway. Nor did any of the family members see the August 2001 accident take place. The family members saw Nolan and Caroline for the first time at the hospital. Following Dowdy II's interpretation of the term "accident," the undeniable emotional distress suffered by Nolan's and Caroline's family members was not incurred "in the same accident" that injured Caroline and Nolan.[23] According to the families' allegations, some of Nolan's and Caroline's family members were dining "just minutes away" from the hospital, and Brian Noel drove past the accident scene on his way to the hospital. These allegations, while poignant, do not distinguish the claims of Nolan's and Caroline's family members from the emotional distress claims that failed to trigger separate per-person coverage in Dowdy II. The emotional distress suffered by the family members does not trigger separate per-person coverage because they were not in or near the August 2001 collision.
The families draw attention to cases in which we allowed family members' emotional distress claims to trigger separate per-person coverage. In Lawrence, we allowed the parents' claims of emotional distress to trigger separate per-person coverage limits; but we noted that the insurer had waived the *839 arguments that the emotional distress claimed by the parents did not constitute "bodily injury" and did not meet the policies' requirement of having been "in the same accident" as their son.[24] In Teel, we again allowed a parent's emotional distress claim to trigger separate per-person coverage, but we were interpreting different policy language in that case.[25] These cases do not change the conclusion that the emotional distress suffered by Caroline's and Nolan's family members does not trigger separate per-person coverage limits under the UIM policies in this case. As explained above, this result is compelled by Dowdy II.
Nor is a different result compelled by the new evidence presented in this case. Through discovery, the families obtained evidence that State Farm has, at times, paid emotional distress claimants under separate per-person limits. The families argue that this is strong evidence that the proper interpretation of the policy would allow Nolan's and Caroline's family members' claims to fall under separate per-person limits. But, according to State Farm, these payments were made at a time when the law was unsettled, and served as compromises to avoid litigation. The families have identified some isolated cases where State Farm made payments under separate per-person limits to family members who were not in the collision. But this evidence is insufficient to support the conclusion that State Farm consistently made such payments or is obligated to make such payments. Moreover, this evidence does not compel revisiting the decision in Dowdy II.[26]
The families also argue that State Farm's limits of liability clause does not include limiting language found elsewhere in the State Farm policy. They cite to C.P. ex rel. M.L. v. Allstate Insurance Co.,[27] a case in which an insurer "knew how to phrase an exclusion unambiguously" but failed to repeat the relevant exclusion in a separate provision of the policy; we concluded in M.L. that the policy provided the disputed coverage because the insurer had not expressly excluded it.[28] In the present case, the families draw attention to the fact that a separate provision of State Farm's policy limits coverage to injuries sustained by an insured "while they operate or occupy a vehicle covered under the liability section." According to the families, this demonstrates State Farm's ability to be more precise in defining and clarifying the terms of the policy. The families argue that State Farm's failure to employ limiting terms shows State Farm's clear intent to provide broader coverage. However, we find that the absence of these terms creates, at best, an ambiguity, rather than a clear expression of intent. To the degree that an ambiguity exists, we already applied the relevant rules of construction when we interpreted the policy language in Dowdy II.[29] And there we rejected the interpretation of the UIM policy urged by the families in this case.

B. Alaska Insurance Statutes Do Not Require Separate Per-Person Coverage For Family Members' Emotional Distress Claims.
The next question to consider is whether State Farm's policy is consistent *840 with the requirements of Alaska's insurance statutes. If a policy does not provide statutorily required coverage, it will be reformed to conform with statutory requirements.[30] Former AS 21.89.020(c), now renumbered as AS 21.96.020(c), requires automobile liability insurers to provide UIM coverage that meets certain criteria.[31] Under this statute, insurers must offer policies with certain per-person and per-accident coverage limits. The statute also prohibits insurers from providing UIM coverage with limits "less than the limit in AS 28.20.440 or AS 28.22.101," statutory provisions that identify requirements governing liability policies.[32] The parties dispute the meaning of the statutory language that suggests that coverage is triggered where damages arise "because of bodily injury to or death of two or more persons in one accident."[33]
According to the families, these statutes, particularly AS 28.20.440, require insurers to provide UIM coverage for each family member injured as a result of an accident and do not permit any restrictions on that coverage unless specifically authorized by statute. The families argue that a separate per-person coverage limit is triggered for each family member who was injured as a result of the August 2001 accident. Because several members of each family suffered injuries in this case, the families insist that the aggregate per-accident limit has not been exhausted. To the extent that the terms of State Farm's policy fall short of this coverage, the families argue that reformation of the policy is required.
State Farm contends that in order to secure UIM coverage under the statutory scheme, an injured family member must be injured in an accident, not simply as a result of the accident. In turn, the insurer argues that because only Nolan Houle and Caroline Noel were in the August 2001 accident, only one per-person coverage limit was activated for each family, and as a result, any covered damages suffered by other family members are subject to the single per-person caps. Based on its interpretation of the statutes, State Farm argues that reformation is not required because its payments have exhausted the single per-person limits for all six of the Houle and Noel policies, the full extent of statutory required coverage.
Dowdy II is instructive in addressing this dispute. That case did not address the interpretation of the insurance statutes laid out above, and it does not directly control the question of statutory construction before us now.[34] But in Dowdy II, we construed similar *841 language and identified the generally accepted usage of the phrase "in the same accident."[35] We explained that the generally accepted usage of the phrase "in the same accident" was inconsistent with the conclusion that non-witness bystanders incurred injuries "in the same accident" that hospitalized their daughter.[36]
State Farm urges us to interpret the statute's "in one accident" language and "in any one accident" language in the same way that we interpreted the phrase "in the same accident" in Dowdy II. State Farm suggests that the meaning of the words "in one accident" and "in any one accident" is effectively indistinguishable from the phrase "in the same accident" interpreted in Dowdy II. State Farm argues that ordinary and customary usage should control the interpretation of the statute. We agree.
The families rightly note that ordinary usage does not always govern statutory interpretation. We construe "words and phrases according to their `common and approved usage' unless such words and phrases have acquired peculiar meaning by virtue of statutory definition or judicial construction."[37] But the families did not show how the statutes give the words "in one accident" or "in any one accident" a peculiar and appropriate meaning different from the phrase interpreted in Dowdy II. Thus, we conclude that Nolan's and Caroline's family members were not "in" the August 2001 accident. The statutes require State Farm only to provide the family members with coverage under the per-person limits triggered by Caroline and Nolan.
Alaska Statute 21.96.020, which requires insurers to offer UIM coverage, is intended to protect insured persons from suffering uncompensated damages.[38] With this purpose in mind, the families urge us to avoid reading limits into the statute. Their approach has some support.[39] We reject State Farm's contention that the families' approach is a "generic" effort to avoid the specific terms of the statute. But the families' argument does not justify rejecting the common and approved usage of "in one accident." The rules governing insurance policy interpretation, which we applied in Dowdy II, require construing any ambiguities in favor of the insured.[40] But even under those rules of construction we concluded that the family members' emotional distress claims were not incurred "in the same accident" from which the distress resulted.[41] Applying the rules of statutory construction here does not mandate a different result.
The families emphasize that the legislature mandated "coverage . . . for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured *842 motor vehicles because of bodily injury or death."[42] The families correctly explain that the phrase "legally entitled to recover damages" incorporates background tort principles into the statutory scheme. They argue that where a person is "legally entitled to recover damages," that person has met the threshold requirements for coverage and is entitled to proceed to arbitration. According to the families, State Farm's interpretation creates an impermissible gap between the injuries that are compensable under tort law and the injuries compensable under the policy.[43] They suggest that the doctrine of proximate cause and the requirements for establishing a cause of action provide the workable limits on coverage that the legislature intended. But the limits of tort law are not the only coverage limits found in the statutes. The statutes also require us to give effect to the words "in one accident" and "in any one accident." Giving effect to the ordinary meaning of this phrase, we conclude that Nolan Houle's and Caroline Noel's family members are not entitled to separate per-person coverage under the underinsured motorist statute. These family members were not "in" the accident.
The families also argue that the so-called "mirror-image rule" requires State Farm to provide the same scope of coverage under its UIM policy that it provides under the liability policy. We have explained that "automobile insurance companies must offer insureds UM/UIM coverage that mirrors the insureds' liability."[44] The two policies should provide "the same benefit level."[45] The families urge that the same reasoning requires separate per-person coverage for their emotional distress and loss of consortium claims because such coverage would be available under the liability policy. But the families have not shown how State Farm's interpretation of the UIM policy would provide different benefits than those available under the liability policy.[46] As State Farm points out, the liability and UIM policies include the same language to describe injuries to one person. But the two policies differ in whom they cover. Liability insurance is not designed to compensate the persons insured under the policy for their injuries; coverage is available to compensate an indeterminate class of third parties who may suffer injuries at the hands of the insured. By contrast, a UIM policy provides first-person coverage to the persons insured under that policy. There is no clear analogy between the circumstances of this case and the payments that would be provided to third parties under the Houles' and Noels' liability policies. In other words, the mirror image rule does not change the conclusion that the respondent family members are not entitled to separate per-person coverage under the underinsured motorist statute.
We see no reason to stray from generally accepted usage in interpreting the insurance statutes in this case. Looking to accepted usage, we conclude that the respondent family members were not injured "in the same accident" as Nolan and Caroline. Because Alaska's underinsured motorist statute does not require separate per-person coverage for *843 these family members, reformation is unnecessary.

V. CONCLUSION
Because neither AS 21.96.020, AS 28.20.440, nor AS 28.22.101 requires coverage that is unavailable under the disputed insurance policies, we REVERSE the decision to reform the policies and REMAND for the superior court to enter judgment for State Farm.
WINFREE, Justice, not participating.
NOTES
[1] We consider the arguments before us in order to interpret the disputed provisions of the families' UIM policies; this case does not conclusively interpret obligations or limitations under Schubert's liability policy.
[2] See BLACK'S LAW DICTIONARY 1440 (8th ed. 2004) (defining "stacking" as "[t]he process of obtaining benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate"); see also IRVIN E. SCHERMER & WILLIAM J. SCHERMER, AUTOMOBILE LIABILITY INSURANCE § 29:1, at 29-3 (4th ed. 2004).
[3] The full extent of the damages suffered by the Houles and Noels is not known. The record suggests that Caroline was in a coma for a week; spent 12 days in intensive care; had approximately 30 days of post-traumatic amnesia; and suffered a severe traumatic brain injury that caused, at least for some time, cognitive and memory deficits, hemiparesis, migraine headaches, knee-buckling, and full-body spasms. We have no doubt that the loss and injury of loved ones may have devastating physiological effects on close family members. In this case, the families assert that they were prepared to present evidence of asthma, depression, trouble sleeping, anxiety attacks, and chronic stress that Caroline's and Nolan's family members suffered as a result of the tragic car accident. State Farm has not contested before this court the amount of the families' damages as a factual matter. Under the policies, the extent of monetary damages would be resolved in arbitration if coverage limits were not exhausted.
[4] State Farm has asserted that its payments "totaled in excess of $688,000 to the Noel family and $1.288 million to the Houle family," which (according to State Farm) exhausted the stacked policy limits of both families' UIM coverage. State Farm claims that these sums include "interest. . . . and add[-]ons." Nevertheless, the sums that State Farm reports paying to the Noel and Houle families fall short of the $900,000 and $1.5 million stacked per-accident limits in the families' respective UIM policies.
[5] 192 P.3d 994 (Alaska 2008).
[6] Id. at 998 (quoting State Farm Mut. Auto. Ins. Co. v. Lestenkof, 155 P.3d 313, 316 (Alaska 2007)).
[7] Id. (citing Simmons v. Ins. Co. of N. Am., 17 P.3d 56, 59 (Alaska 2001)).
[8] See State Farm Mut. Auto. Ins. Co. v. Lawrence, 26 P.3d 1074, 1080 (Alaska 2001) ("If State Farm has failed to provide [required] coverage, its UM/UIM provisions will be reformed to conform with the statutory requirements." (citing State Farm Mut. Auto. Ins. Co. v. Harrington, 918 P.2d 1022, 1025 (Alaska 1996))).
[9] Allstate Ins. Co. v. Teel, 100 P.3d 2, 4 (Alaska 2004).
[10] C.P. ex rel. M.L. v. Allstate Ins. Co., 996 P.2d 1216, 1222 (Alaska 2000).
[11] Teel, 100 P.3d at 4.
[12] Dowdy II, 192 P.3d at 998 (footnotes omitted).
[13] See Lawrence, 26 P.3d at 1077; Dowdy II, 192 P.3d at 996 n. 9.
[14] See Lawrence, 26 P.3d at 1075-76 (considering the claims of Tobitha and Stacey Lawrence Sr., who suffered emotional distress as a result of their son's hospitalization following a collision with a suicidal, underinsured driver and who sought separate per-person coverage after payments to their son had exhausted the per-person limit for an accident involving one person); Dowdy II, 192 P.3d at 995 (considering the claims of Asa and Barbara Dowdy, who suffered severe emotional distress as a result of the death of their 17-year-old daughter in a collision with an underinsured intoxicated driver and who sought separate per-person coverage after payments to their daughter's estate had exhausted the per-person limit for an accident involving one person).
[15] See Lawrence, 26 P.3d at 1077 (quoting Crabtree v. State Farm Ins. Co., 632 So.2d 736, 741 (La. 1994)).
[16] Id. at 1077-78 (concluding that State Farm had waived the relevant arguments about interpretation of the policy).
[17] Dowdy II, 192 P.3d at 999.
[18] Id. at 995.
[19] Id. at 1001-02.
[20] Id. at 999-1002.
[21] Id. at 999.
[22] Id. at 1001.
[23] Testing the logic of Dowdy II's definition of "accident," the respondent family members ask: If they were not injured in the same accident as Caroline and Nolan, in what accident were they injured? But Dowdy II made clear that not all compensable injuries are incurred "in" a covered accident under the terms of State Farm's UIM policy. Id. ("[I]t is not possible to say that all plaintiffs with NIED claims that are valid under Alaska law are necessarily injured in the same accident as their injured relatives."). The family members were injured "as a result" of the accident but not "in" the accident.
[24] Lawrence, 26 P.3d at 1077.
[25] Allstate Ins. Co. v. Teel, 100 P.3d 2, 3-4 (Alaska 2004) (concluding that a mother's emotional distress was "because of" the bodily injury suffered by her son, and thus, satisfied the requirements for separate per-person coverage under a policy that defined an "insured person" as someone who is legally entitled to recover damages "because of bodily injury to [the insured], a resident relative, or an occupant of [the insured's] auto with [the insured's] permission" (italics omitted)).
[26] See Pratt & Whitney Can., Inc. v. Sheehan, 852 P.2d 1173, 1176 (Alaska 1993) ("[W]e will overrule a prior decision only when `clearly convinced [that] the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent'. . . ." (quoting State v. Dunlop, 721 P.2d 604, 610 (Alaska 1986))).
[27] 996 P.2d 1216 (Alaska 2000).
[28] Id. at 1227-28.
[29] See, e.g., Dowdy II, 192 P.3d 994, 998 (Alaska 2008) ("Ambiguities in . . . . insurance policies are to be construed most favorably to an insured, but ambiguities only exist when there are two or more reasonable interpretations of particular policy language.").
[30] State Farm Mut. Auto. Ins. Co. v. Harrington, 918 P.2d 1022, 1025 (Alaska 1996) (citing Hughes v. Harrelson, 844 P.2d 1106, 1107 (Alaska 1993); Burton v. State Farm Fire & Cas. Co., 796 P.2d 1361, 1363 (Alaska 1990); Hillman v. Nationwide Mut. Fire Ins. Co., 758 P.2d 1248, 1250-53 (Alaska 1988)).
[31] AS 21.96.020(c) (requiring "coverage . . . for the protection of the persons insured under the policy who are legally entitled to recover damages for bodily injury or death from owners or operators of an uninsured or underinsured motor vehicle").
[32] Id.; see also AS 28.20.440 (identifying liability coverage that automobile insurers are required to provide); AS 28.22.101 (identifying general coverage requirements with which automobile insurers must comply).
[33] This language appears in two sections of the insurance statute: AS 21.96.020(c)(2)(A)-(E) (requiring coverage where damages arise "because of bodily injury to or death of two or more persons in one accident"); and AS 28.22.101(d) (requiring coverage where damages arise "because of bodily injury to or death of two or more persons in any one accident"). AS 28.20.440(b)(2) describes per-accident liability coverage in roughly the same language: "coverage. . . because of bodily injury to or death of two or more persons in any one accident." Neither party has addressed specifically whether the word "any" in AS 28.20.440(b)(2) necessitates interpreting that statute differently from AS 28.22.101(d) and AS 21.89.020(c). We see no reason to distinguish these phrases in this case. The parties have not suggested that there is any significant difference between these statutory phrases.
[34] State Farm argued before the superior court, and seems to suggest here, that our decision not to reform the insurance policies in Dowdy II should be read as a statement that the policies are consistent with statutory requirements. But this argument overlooks our policy of addressing only those issues that have been properly presented and briefed. See, e.g., State Farm Mut. Auto. Ins. Co. v. Lawrence, 26 P.3d 1074, 1077 (Alaska 2001) (declining to reach the merits of coverage dispute because insurer waived argument). The superior court was right not to "read so much into the silence of Dowdy II" on the statutory issues.
[35] Dowdy II, 192 P.3d at 999 ("To conclude that either Barbara or Asa Dowdy were injured `in the same accident' with [their daughter] would stretch the meaning of that phrase beyond any generally accepted usage.").
[36] See id.
[37] Lynch v. McCann, 478 P.2d 835, 837 (Alaska 1970) (citing AS 01.10.040).
[38] Hillman v. Nationwide Mut. Fire Ins. Co., 758 P.2d 1248, 1252 (Alaska 1988) ("The purpose of the statute is to protect completely, those willing to accept its protection, from all harm . . . produced by uninsured motorists." (internal citation and quotation marks omitted)); see Coughlin v. Gov't Emps. Ins. Co., 69 P.3d 986, 991 (Alaska 2003) ("[T]he purpose of the statute [is] to ensure that UIM coverage is secondary rather than primary coverage while at the same time making the benefit of UIM coverage broadly available.").
[39] In a variety of contexts, we have noted that statutes should be construed liberally to give effect to their purpose. See, e.g., Imperial Mfg. Ice Cold Coolers, Inc. v. Shannon, 101 P.3d 627, 630 (Alaska 2004) (calling for remedial statute "to be liberally construed to effectuate its purpose"); Allstate Ins. Co. v. Teel, 100 P.3d 2, 4 (Alaska 2004) ("We construe grants of coverage broadly and interpret exclusions narrowly."); Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdivision, 902 P.2d 766, 773 (Alaska 1995) ("[W]e construe these statutes in a manner to avoid frustrating their remedial purpose.").
[40] Dowdy II, 192 P.3d at 998 ("Ambiguities in. . . insurance policies are to be construed most favorably to an insured, but ambiguities only exist when there are two or more reasonable interpretations of particular policy language.").
[41] Id. at 1002 ("[I]t seems plain that the `in the same accident' language of the policy cannot reasonably be construed to cover the Dowdys' NIED claim.").
[42] AS 28.20.440(b)(3); see also AS 21.96.020(c).
[43] The families also characterize this as an impermissible "exclusion" from coverage.
[44] State Farm Mut. Auto. Ins. Co. v. Lawrence, 26 P.3d 1074, 1079-80 (Alaska 2001) (emphasis added) (concluding that because the injured party's liability policy covered punitive damages, that party's UIM policy should compensate for punitive damages). The legislature later superseded this specific holding with Ch. 172 SLA 2004, which amended AS 21.89.020(c) (now AS 21.96.020(c)) to provide that "coverage for punitive damages that might otherwise be recoverable from an uninsured or underinsured person is not required under this paragraph." But the following general requirement remains intact: An automobile insurer must make available UIM coverage with the same limits as the liability policies it offers. AS 21.89.020(c)(1); see also State Farm Mut. Auto. Ins. Co. v. Harrington, 918 P.2d 1022, 1025 (Alaska 1996) (concluding that a policyholder was entitled to coverage for pre-judgment interest and attorney's fees where that party's liability policy covered pre-judgment interest and attorney's fees).
[45] Lawrence, 26 P.3d at 1079.
[46] Harrington, 918 P.2d at 1026 ("[T]he evident purpose of section [AS 21.96.]020(c)(1) is to provide for the insured, as an injured claimant, the same benefit level as that provided by the insured to those asserting claims against the insured.").