**SAFETY NATIONAL CASUALTY CORPORATION, Appellant,**

v.

**PACIFIC EMPLOYERS INSURANCE COMPANY, a corporation; First State Insurance Company, a corporation; and Florida Insurance Guaranty Association, Inc., a corporation, Appellees.**

No. S–7335.

Supreme Court of Alaska.

Nov. 29, 1996.

Mark A. Sandberg and William W. Wuestenfeld, Sandberg, Wuestenfeld & Corey, Anchorage, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and FABE, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This is a dispute between two insurers, one primary and the other excess. The primary insurer entered into a settlement agreement on behalf of its insured and now seeks to hold the excess insurer responsible for a share of attorney's fees under Alaska Civil Rule 82. We hold that the excess insurer is not responsible for a portion of Rule 82 attorney's fees.

## II. FACTS AND PROCEEDINGS

### A. Background

On November 18, 1985, Norbert Brey was injured in a car accident. Brey was allegedly riding in an infant car seat manufactured by Spalding & Evenflo Companies, Inc. (Spalding). Brey's representatives sued Spalding. Spalding carried several layers of insurance, provided by four different carriers: First State Insurance Company (First State), Safety Mutual Casualty Corporation (Safety), Integrity Insurance Company (Integrity), and Pacific Employers Insurance Company (Pacific). Only Safety and Pacific are parties to this appeal. Safety alleges that Spalding's liability insurance policies had the following limits:

| Insurer Policy | Limits |
| --- | --- |
| First State up to | $1 million |
| Safety | $1 million to $2 million |
| Integrity | $2 million to $5 million |
| Pacific | $5 million to $11 million |

Safety paid Spalding $1,400,100 to settle Brey's claim. Of that sum, approximately $510,000 was the remainder of Safety's $1 million liability policy limit, which had been eroded by prior payments. The rest of the settlement, approximately $890,000, represented attorney's fees payable under Rule 82 and *Schultz v. Travelers Indemnity Co.*, 754 P.2d 265, 265 (Alaska 1988). This figure for attorney's fees was established by applying

Brooks W. Chandler and Krista S. Stearns, Hicks, Boyd, Chandler & Falconer, Anchorage, for Appellant.

Rule 82 to a hypothetical jury award of $9 million.

Safety demanded contribution from the other insurers for the Rule 82 fees. Pacific refused to contribute, arguing that it was an excess insurer [1] and thus had no obligation to pay any share of the Rule 82 fees.

Safety advanced the entire settlement amount and reserved the right to pursue contribution from the other insurers. Safety then brought a declaratory judgment action to determine the other insurers' obligations for Rule 82 fees. Safety argued that Pacific adopted the supplemental payments terms of the Safety policy through Pacific's "following form" clause, making it a co-insurer for such payments.

Pacific moved for judgment on the pleadings and/or summary judgment. Safety filed a cross-motion for partial summary judgment. After oral argument, the superior court ruled that Pacific was an excess insurer and thus not responsible for a share of Rule 82 fees. Safety appeals.

### B. The Policies

While acknowledging that Pacific is an excess liability insurer, Safety argues that as to Rule 82 fees, Pacific and Safety are co-primary insurers. The relevant language from both policies follows.

Pacific's Certificate of Excess Insurance lists Safety and another insurance company not a party to this action as the primary insurers. It also states that "this certificate is to indemnify the Insured in accordance with the applicable insuring agreements, exclusions and conditions of the primary insurance for excess loss as specified in Item 6 (Description of Excess Insurance) of the declarations." The certificate further provides, in its "following form" clause:

The insurance afforded by this certificate shall follow that of the primary insurance except:

> ... (2) the insurance afforded by this certificate shall not apply to any expenses for which insurance is provided in the primary insurance....

The Safety policy provided that Safety would pay the "ultimate net loss" owed by the insured as damages. According to Safety, the limit on its "ultimate net loss" obligation was $1 million. The Safety policy also had a supplemental payments clause which provided that *in addition* to the ultimate net loss, Safety would "pay all expenses incurred by the Corporation, [and] all costs taxed against the Insured in any suit defended by the Corporation." The parties do not dispute that this supplemental payments clause obligates Safety to pay for Rule 82 attorney's fees.

### III. DISCUSSION

█ This case involves the interpretation of a written contract based solely on documentary evidence, which we review in our independent judgment. *Horace Mann Ins. Co. v. Colonial Penn Ins. Co.*, 777 P.2d 1162, 1164 (Alaska 1989).

█ Insurance contracts are interpreted "in accordance with the reasonable expectations" of the insured. *Fulton v. Lloyds & Inst. of London Underwriting Cos.*, 903 P.2d 1062, 1068 (Alaska 1995). This is true even if "painstaking study of the policy provisions would have negated those expectations." *State v. Underwriters at Lloyds*, 755 P.2d 396, 400 (Alaska 1988) (quoting Robert E. Keeton, *Basic Text on Insurance Law* § 6.3(a), at 351 (1971)).

█ Safety admits that it provided unlimited primary coverage for Rule 82 fees. Spalding, by paying its premium to Safety, acquired coverage for any and all court-taxed costs. Safety acknowledges that its coverage for such costs was unlimited.[2] The purpose

---

**1.** Excess insurers provide coverage for claims that exceed the primary insurance coverage. Because of the relatively smaller risk of such a catastrophic loss, excess insurance carries proportionately lower premiums that reflect the lesser probability that such insurance will ever be called upon. *See Alaska Rural Elec. Coop. Ass'n*

*v. INSCO Ltd.*, 785 P.2d 1193, 1194 (Alaska 1990).

**2.** Safety was not required to provide unlimited coverage. In 1985, at the time of the events that gave rise to this case, 3 AAC 29.010(a) (repealed July 1, 1996) allowed insurers to limit their exposure for Rule 82 fees subject to certain restric-

of insurance is to protect against third-party claims, not to insure the solvency of the underlying insurers, absent policy language to the contrary. *See Alaska Rural Elec. Coop. Ass'n,* 785 P.2d at 1195 (holding that absent policy language to the contrary, excess insurer will not be presumed to have duty to drop down and cover losses insured by primary insurer). The insured would not reasonably expect the excess insurer to provide duplicative coverage for court-taxed costs, having already covered such costs completely in the primary insurance.[3]

There is no indication in the record or the policy that Spalding intended to "double insure" against court-taxed costs. Nor is there any indication that the insured thought that Pacific and Safety were co-primary insurers for any purpose.[4] In the absence of such indications, we assume that Spalding reasonably expected to insure against the risk of paying court-taxed costs once.

■ The general expectation that governs the relationship between primary and excess insurers is "that the primary insurer will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted." John A. Appleman, *Insurance Law and Practice* § 4682, at 28 (Berdal ed.1979). Only when the primary insurer's limits are exhausted do obligations on the part of the excess insurer arise. *Id.* at 29–30. Under Alaska law it is established that primary policy limits include, among other things, facial limits and attorney's fees taxed under Rule 82, to the extent of coverage. *State Farm Mut. Auto. Ins. Co. v. Harrington,* 918 P.2d 1022, 1026–27 (Alaska 1996); *Schultz v. Travelers Indem. Co.,* 754 P.2d

265, 267 (Alaska 1988). Here Safety did not exhaust its policy limits when it paid both the $510,000, representing the remainder due under its facial limits, and the approximate sum of $890,000, representing what the parties agreed would be attorney's fees under Rule 82. Since these sums were within the Safety policy limits, Pacific has no liability to reimburse Safety for them.

## IV. CONCLUSION

We conclude that the insured would not have reasonably expected Pacific to provide coverage already provided in the Safety policy. The judgment of the superior court is AFFIRMED.

EASTAUGH, J., not participating.

---

tions, such as a notice requirement and a minimum level of coverage. On July 1, 1996, that regulation was replaced with 3 AAC 26.500 -.550. The new regulations also allow insurers to limit their exposure to Rule 82 fees, but the notice requirement and minimum standards now depend on the terms of the policy.

3. Had Safety limited its liability for Rule 82 fees, Spalding probably would have wanted to procure additional coverage for court-taxed costs beyond the Safety policy limits. To the extent that the Safety policy did not cover all court-taxed costs, the Pacific excess insurance presumptively could have been ready to fill the breach.

4. Compare our recent decision in *Fulton,* 903 P.2d at 1062. In *Fulton,* only one policy was issued to the insured. *Id.* at 1068. Lloyds contended that it was only an excess insurer and thus could not be bound by the primary insurer's decisions and conduct in the defense of the insured. *Id.* at 1067–69. However, we found that because only a single policy was issued and it did not specifically differentiate the duties of the two carriers, the insured would reasonably expect both insurers to be responsible for the defense of the insured. *Id.* at 1068–69. Unlike the policies in *Fulton,* the policies issued here were separate and distinct.