*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHAD HAHN, | ) | |
| | ) | Supreme Court No. S-16441 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-11102 CI |
| v. | ) | |
| | ) | O P I N I O N |
| GEICO CHOICE INSURANCE | ) | |
| COMPANY, FRANKLIN | ) | No. 7242 – May 11, 2018 |
| TOWNSEND and BLUE CROSS | ) | |
| BLUE SHIELD, | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Yale H. Metzger, Law Offices of Yale H. Metzger, Anchorage, for Appellant. Michael J. Hanson, Call & Hanson, P.C., and Barry J. Kell, Kell & Associates, P.C., Anchorage, for Appellee GEICO Choice Insurance Company. No appearance by Appellee Franklin Townsend or Blue Cross Blue Shield.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I. INTRODUCTION

While sitting on his motorcycle at a stop light, Chad Hahn was thrown backwards when Franklin Townsend's car failed to stop in time and struck the

motorcycle. During settlement negotiations in the tort suit that followed, Hahn sought payment under Townsend's underinsured motorist (UIM) insurance policy. Hahn argued that he was an insured occupant of Townsend's car because he landed on the car after the impact and that Townsend's liability insurance would not cover the full extent of his damages, rendering Townsend underinsured. Townsend's insurer, GEICO Choice Insurance Company (GEICO), sued for a declaratory judgment that no UIM coverage was available. Hahn answered, raising a number of affirmative defenses including that GEICO's declaratory judgment action was not ripe and that the court therefore lacked subject matter jurisdiction. Hahn also filed a counterclaim for a declaratory judgment that UIM coverage was available to him, and asserted third-party claims against Townsend, seeking to join him as a necessary party and a real party in interest. The superior court concluded that it had subject matter jurisdiction, granted summary judgment and a declaratory judgment in GEICO's favor, and dismissed the third-party claims against Townsend. Hahn appeals; we affirm.

## II.     BACKGROUND

### A.     Facts

In April 2015 Franklin Townsend rear-ended Chad Hahn with his car while Hahn was stopped on his motorcycle at a red light. The impact threw Hahn from his motorcycle. According to Hahn, he landed momentarily on the hood, windshield, and roof of Townsend's vehicle before coming to rest on the street. Hahn and Townsend had no relationship prior to the accident. Hahn's medical bills totaled around $160,000 and Hahn claimed, through his attorney, that Townsend faced personal liability "in the neighborhood of $500,000 to $1,000,000."[1]

---

[1]     Because Hahn's tort claims were brought in a separate proceeding, *Hahn v. Townsend*, 3AN-15-09509 CI, we do not make — and our summary of facts should
(continued...)

Townsend was insured under an Alaska Family Automobile Insurance Policy issued by GEICO. Townsend's policy provides up to $50,000 of property damage liability per person and $50,000 for bodily injury liability per person. In addition, it includes UIM benefits, extending up to $50,000 of coverage for "damages for bodily injury [and property damage], caused by an accident, which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle, an underinsured motor vehicle, or a hit and run motor vehicle arising out of the ownership, maintenance or use of that vehicle."[2] The GEICO policy defines "insured" as follows:

(a)	you;
(b)	your relatives if residents of your household;
(c)	*any other person while occupying an insured auto*;
(d)	any person who is entitled to recover damages because of bodily injury sustained by an insured under (a), (b), and (c) above. [Emphasis added.]

The GEICO policy then defines "occupying" to mean "in, upon, getting into or getting out of." The UIM coverage is not available "until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments or settlements."[3]

Hahn sued Townsend for negligence and intentional torts arising out of the accident. GEICO, as Townsend's insurer, offered to pay Hahn "full per person limits of liability bodily injury coverage and the full amount of the liability property damage

---

[1] (...continued)
not be construed as implying — any conclusions as to Townsend's potential tort liability to Hahn or the extent thereof.

[2]	*See also* AS 21.96.020 (requiring that insurers offer UIM coverage).

[3]	*See also* AS 28.22.201(a) (setting limits on the application of UIM coverage).

coverage" in exchange for a full release of all claims against Townsend. Hahn's attorney communicated to Townsend's attorney that if the UIM limits were offered in addition to the property damage and bodily injury limits, he would advise Hahn to release all claims against Townsend. Townsend's attorney communicated this request to GEICO, and under increasing pressure from Hahn's attorney, repeatedly requested that GEICO pay UIM limits as Hahn suggested in light of the excess exposure Townsend faced as well as increasing litigation costs. GEICO repeatedly reiterated that it was willing to pay Hahn full bodily injury and property damage limits under Townsend's policy in exchange for a full release of all claims against Townsend. But GEICO refused to pay UIM benefits to Hahn, believing a UIM claim was without factual or legal support.

## B.    Proceedings

GEICO filed suit against Hahn seeking a declaratory judgment that "there is no coverage available to Chad Hahn under the UIM coverage of Townsend's GEICO policy with respect to the April 18, 2015 accident, and that [GEICO] has no obligation to pay any damages Hahn seeks to recover under that coverage as a result of that accident." GEICO argued that Hahn was not "occupying" Townsend's vehicle under the policy and therefore was not an insured. Hahn asserted a counterclaim for a declaratory judgment that "there is underinsured motorist coverage available to Chad Hahn under the GEICO . . . policy issued to Franklin Townsend" because Hahn was occupying Townsend's vehicle when he landed on it. Hahn also sought to join Townsend and Hahn's medical insurance provider Blue Cross Blue Shield (Blue Cross) as "third-party defendants", arguing that they were real parties in interest and necessary parties under Alaska Civil Rules 17 and 19, respectively. Hahn also asserted as third-party claims against Townsend the same negligence and intentional tort claims as those included in Hahn's separate personal injury action.

GEICO filed a summary judgment motion seeking a ruling that Hahn was not covered under the UIM coverage of Townsend's policy because he was not "occupying" Townsend's vehicle at the time of the collision as defined by the GEICO policy. GEICO also filed a motion to dismiss Hahn's third-party claims, arguing that the only interested parties with respect to the insurance coverage question were GEICO and Hahn. Townsend filed a motion seeking to dismiss the third-party claims against him, arguing that he was not a necessary party and that the duplicative claims were meant to pressure Townsend and GEICO to settle in the personal injury action.[4] Hahn opposed GEICO's and Townsend's motions.

The superior court heard arguments on GEICO's motion for summary judgment, motion to dismiss, and other pending motions. At the hearing and in a "Suggestion of Lack of Subject Matter Jurisdiction" filed after the hearing Hahn argued that GEICO's declaratory judgment action was not ripe because he had not made a formal claim for UIM benefits, and because the bodily injury and property damage liability limits had not been "used up," a pre-condition for UIM benefits under the policy. GEICO filed a response to Hahn's Suggestion, arguing that because Hahn had demanded UIM benefits in settlement negotiations there was an actual controversy turning on a purely legal issue that the court had jurisdiction to decide under the provision for declaratory judgments in AS 22.10.020(g).[5]

---

[4]    Blue Cross did not object to being joined, but opposed GEICO's summary judgment motion and filed its own cross-motion, seeking a ruling that Hahn was entitled to coverage under Townsend's policy. GEICO opposed the motion.

[5]    AS 22.10.020(g) ("In case of an actual controversy . . . , the superior court . . . may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought.").

The superior court issued a written order concluding (1) it had jurisdiction over the coverage dispute and the dispute was ripe for decision; (2) Blue Cross and Townsend could not be joined as "third-party defendants", the procedure for which is governed by Alaska Civil Rule 14 because neither party could be liable to Hahn for GEICO's claims against him; (3) Blue Cross was properly joined as a real party in interest, but Townsend was neither a real party in interest nor a necessary party, and Hahn's duplicative claims against Townsend should therefore be dismissed; and (4) Hahn was not entitled to UIM coverage under Townsend's GEICO policy and GEICO was therefore entitled to summary judgment.

With respect to jurisdiction, the superior court determined that "Townsend's liability to Hahn will most likely exceed the personal injury policy limits" based on various representations and arguments by the parties. The court also noted that despite not making a formal claim, Hahn repeatedly rejected GEICO's offer of bodily injury and property damage limits but indicated he would drop his tort claims if GEICO also offered UIM coverage. Accordingly, the court reasoned that UIM coverage had become crucial to ongoing settlement negotiations in the personal injury lawsuit, withholding judgment on the availability of such coverage would inhibit ongoing settlement negotiations and cause the parties substantial hardship, and the case was therefore ripe for decision.

With respect to joinder under Rules 17 and 19, the superior court reasoned that "[u]nlike GEICO or Hahn, Townsend's interest [was] in disputing and minimizing his personal liability for Hahn's injuries" and that the declaratory judgment action would have no effect on this underlying liability. The court emphasized that the contractual relationship at issue in the declaratory judgment action was between Hahn, as a potential insured, and GEICO. The court also noted that allowing the third-party claims to go forward might lead to multiple and inconsistent legal obligations for Townsend because

they duplicated the claims in the personal injury action. It therefore dismissed the third-party claims against Townsend because he was neither a real party in interest nor a necessary party. Because it concluded that Blue Cross was partially subrogated to any UIM benefits accruing to Hahn, the court did not dismiss Blue Cross.

Lastly, with regard to the availability of coverage, the court construed the policy's use of the word "upon" together with the word "occupying." The court determined that "occupying," along with "getting in" and "getting out of," implied a prior relationship with the insured vehicle, thereby limiting the meaning of "upon" and excluding Hahn from coverage. Moreover, it concluded that a "reasonable insured would read all terms of the policy in context" and "not assign undue weight to a single term." The court supported its interpretation with out-of-state case law interpreting similar policy provisions to require "some degree of connection between the claimant, the injury, and the insured vehicle" beyond incidental contact. And it noted that interpreting "upon" in the manner Hahn advocated would yield absurd results, favoring those who happened to land on a car rather than the ground.

The court entered judgment in favor of GEICO and against Hahn and Blue Cross. Hahn appeals. Blue Cross does not.

## III.   STANDARD OF REVIEW

Alaska's declaratory judgment statute provides in relevant part that "[i]n case of an actual controversy . . . the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration."[6] Thus, where an actual controversy exists, we review the superior court's

---

[6]    AS 22.10.020(g).

prudential decision to issue a declaratory judgment for abuse of discretion.[7]  However, because "[w]hether the superior court had subject matter jurisdiction . . . is a question of law,"[8] we review the superior court's ripeness determination de novo.[9]

"The question of whether to permit or require joinder of a real party in interest 'rests in the sound discretion of the superior court.' "[10]  "We review decisions granting or denying motions to dismiss de novo."[11]

"We review rulings on motions for summary judgment de novo, 'reading the record in the light most favorable to the non-moving party and making all reasonable

---

[7]     *See State v. ACLU of Alaska*, 204 P.3d 364, 368 (Alaska 2009).

[8]     *Hydaburg Coop. Ass'n v. Hydaburg Fisheries*, 925 P.2d 246, 248 (Alaska 1996) (second alteration in original) (quoting *Andrews v. Alaska Operating Eng'rs–Emp'rs Training Tr. Fund*, 871 P.2d 1142, 1144 (Alaska 1994)).

[9]     *ACLU of Alaska*, 204 P.3d at 368 ("The statute's reference to an 'actual controversy' encompasses considerations of standing, mootness, and ripeness. . . . [T]his court is the ultimate arbiter of such issues and we review de novo a superior court's ripeness determination." (footnotes omitted)); *see also Jacko v. State, Pebble Ltd. P'ship*, 353 P.3d 337, 340 (Alaska 2015).

We note that we recently stated in *Metcalfe v. State* that "[w]e review a superior court's decision regarding a controversy's ripeness for abuse of discretion." 382 P.3d 1168, 1177 n.47 (Alaska 2016).  This statement incorrectly followed prior opinions that were abrogated by *State v. ACLU of Alaska*; like the parties in *ACLU of Alaska*, the *Metcalfe* opinion "conflate[d] the two requirements for declaratory judgment — standing and the prudential basis for granting declaratory relief — and the different standards of review that attach to each requirement." *See ACLU of Alaska*, 204 P.3d at 367-68.  We reiterate that *ACLU of Alaska* is the correct statement of law.

[10]    *Bethel Family Clinic v. Bethel Wellness Assocs.*, 160 P.3d 142, 144 (Alaska 2007) (quoting *Fairbanks N. Star Borough v. Kandik Constr., Inc. & Assocs.*, 795 P.2d 793, 802 (Alaska 1990)).

[11]    *Varilek v. City of Houston*, 104 P.3d 849, 851 (Alaska 2004).

inferences in its favor.' "[12] "Whether the evidence presented a genuine issue of material fact is a question of law that we independently review."[13] "Contract interpretation is a question of law subject to de novo review. When applying the de novo standard of review, we apply our 'independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[14]

## IV. DISCUSSION

Hahn argues on appeal that the superior court (1) erred in concluding it had subject matter jurisdiction to resolve this dispute under the declaratory judgment provision because Hahn had not made a formal claim to UIM coverage and the preconditions under the policy for UIM coverage were not yet met; (2) erred in dismissing the third-party claims against Townsend because Townsend was a real party in interest who stood to have his personal liability reduced if the court ruled that UIM coverage was available to Hahn; (3) erred in concluding Hahn was not "occupying" Townsend's vehicle within the meaning of the policy because the court's contractual interpretation conflicted with what a reasonable insured would expect, was contrary to out-of-state case law, and violated public policy; and (4) erred in concluding that no genuine issue of material fact existed and that GEICO was entitled to judgment as a matter of law. Hahn does not appeal the court's determination that Townsend could not properly be joined under Civil Rules 14 or 19.

---

[12]  *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)).

[13]  *Id.* (quoting *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013)).

[14]  *Id.* (footnotes omitted) (quoting *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011)).

**A.** **The Declaratory Judgment Action Was Ripe, The Superior Court Had Subject Matter Jurisdiction To Decide It, And The Court Did Not Abuse Its Discretion In Issuing A Declaratory Judgment.**

Hahn argues that the superior court had no subject matter jurisdiction over this case because (1) Hahn never formally made a claim for UIM benefits, so any declaratory judgment that GEICO is not obligated to pay UIM benefits to him under Townsend's policy is an impermissible advisory opinion; (2) Hahn never intended to make a UIM claim under Townsend's policy and was instead more likely to have obtained an excess judgment against Townsend and let Townsend seek recovery from GEICO for any excess judgment Hahn might have obtained against him; (3) Hahn had not exhausted the bodily injury and property damage liability limits in Townsend's policy as is required to trigger UIM coverage; and (4) any real dispute is between Townsend and GEICO because — Hahn claims — GEICO likely filed the declaratory judgment action to avoid a bad faith claim brought by Townsend for its failure to tender UIM benefits to Hahn during settlement negotiations.[15]

Alaska Statute 22.10.020(g) grants the superior court the power to issue declaratory judgments in cases of "actual controversy." This statute provides that "[i]n case of an actual controversy . . . the superior court . . . may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or

---

[15]    Under *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, "where an adverse verdict in excess of policy limits is likely, an insurance company has the duty . . . 'to tender in settlement that portion of the projected money judgment which [it] contractually agreed to pay.' " 828 P.2d 745, 768 (Alaska 1992) (second alteration in original) (quoting *Schultz v. Travelers Indem. Co.*, 754 P.2d 265 (Alaska 1988) (per curiam)), *superseded by statute on other grounds as recognized in Petrolane Inc. v. Robles*, 154 P.3d 1014, 1019-20 (Alaska 2007).

could be sought."[16] The "actual controversy" language "reflects a general limitation on the power of courts to entertain cases . . . [and] encompasses a number of more specific reasons for not deciding cases, including lack of standing, mootness, and lack of ripeness."[17]

"A ripe suit for declaratory judgment will present 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality.' "[18] "[T]here is 'no set formula' for determining whether a case is ripe for adjudication. Instead, '[w]e examine the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration' in an effort to 'balance[] the need for decision against the risks of decision.' "[19]

The superior court likened Townsend's UIM coverage to "excess coverage" — to be paid out after primary coverage has been exhausted — and determined that while we have not yet decided the issue when an action for excess coverage becomes ripe for adjudication, most jurisdictions deem a declaratory judgment appropriate when "it is reasonably likely that a potential claim for excess coverage will mature." The court then determined, based on the parties' representations and arguments, that "Townsend's liability to Hahn will most likely exceed the personal injury policy," making available any applicable excess coverage.

---

[16]    AS 22.10.020(g).

[17]    *Jacko v. State, Pebble Ltd. P'ship*, 353 P.3d 337, 340 (Alaska 2015) (alterations in original) (quoting *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 358 (Alaska 2001)).

[18]    *Id.* at 340 (quoting *Brause*, 21 P.3d at 359).

[19]    *Id.* (second and third alteration in original; footnotes omitted) (first quoting *Brause*, 21 P.3d at 359; then quoting *State v. ACLU of Alaska*, 204 P.3d 364, 369 (Alaska 2009)).

The court also noted that despite not making a formal claim, Hahn repeatedly rejected GEICO's offer of bodily injury and property damage limits but indicated he would drop his tort claims if GEICO also offered UIM coverage. The court observed that Townsend repeatedly asked GEICO to offer Hahn UIM coverage to secure a release of all claims to protect him from a "very large verdict." Accordingly, the court reasoned that UIM coverage had become crucial to ongoing settlement negotiations in the personal injury action and that withholding judgment on the availability of such coverage would inhibit ongoing settlement negotiations and cause the parties substantial hardship. Because of the importance of UIM benefits to the stalled negotiations and because Townsend's liability to Hahn would likely exceed the limits of Townsend's liability policy, the court determined that the case was ripe for decision.

We find no error in the superior court's conclusion. We have not previously directly answered the question of when a declaratory judgment action in the insurance coverage context becomes ripe,[20] but cases from other jurisdictions hold that a declaratory judgment regarding liability for excess insurance coverage is appropriate

---

[20]     In *Grace v. Insurance Company of North America* we held that an excess insurer has no duty to evaluate a claim or make its policy limits available for use in settlement where the claim is less than the limits of the underlying primary policy. 944 P.2d 460, 465-66 (Alaska 1997). We did not, however, address issues of ripeness or subject matter jurisdiction.

as soon as it becomes reasonably likely that a claim for excess coverage will mature.[21] The facts here tend to demonstrate that a UIM claim was reasonably likely to mature.

First, while Hahn may be correct that he had not made a formal claim for UIM benefits, that assertion only goes so far. Hahn made clear through his negotiations with Townsend that if GEICO offered UIM limits he would drop his tort suit. While Hahn characterizes this behavior as an "invitation to offer," we are not here dealing with a question of contract formation. The practical effect of making a settlement contingent on GEICO proffering UIM benefits was to make a demand for UIM benefits. After GEICO filed for declaratory judgment against Hahn, Hahn continued to insist on UIM benefits in exchange for a release of claims against Townsend; and, significantly, Hahn counterclaimed against GEICO for an order declaring that UIM coverage was available.

---

[21]     *See, e.g.*, *Tocci Bldg. Corp. of N.J. v. Va. Sur. Co.*, 750 F. Supp. 2d 316, 321 (D. Mass. 2010) ("Actions for declaratory judgment in the insurance context nearly always depend upon several contingencies — whether the insured will be found liable, the extent of coverage, the size of any potential damage award or settlement, etc. As such, 'litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.' "); *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 967 A.2d 1, 31 (Conn. 2009) ("Numerous courts have concluded that, for a declaratory judgment coverage action involving an excess policy to be ripe, it must be practically or reasonably likely that the insured's potential liability will reach into the excess coverage; absolute proof that the policies will be triggered is not required"); *XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1218 (Del. 2014) ("In this specific insurance coverage context, the plaintiff must establish a 'reasonable likelihood' that coverage under the disputed policies will be triggered."); *see also E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177-78 (2d Cir. 2001); *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 30-31 (D. Mass. 2000); *DiCocco v. Nat'l Gen. Ins. Co.*, 140 P.3d 314, 316 (Colo. App. 2006); *UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co.*, 647 A.2d 182, 189-90 (N.J. Super. Law Div. 1994); *Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*, 826 N.Y.S.2d 55, 56 (N.Y. App. Div. 2006).

Second, as GEICO argues, Hahn's assertions that he never intended to make a future claim for UIM benefits are likewise unconvincing. Hahn raised the issue of UIM coverage in negotiations, filed a counterclaim seeking a determination that UIM coverage would be available to him, contested summary judgment motions on the issue, and filed this appeal. And while Hahn argues that he was just as likely to obtain an excess judgment from Townsend and let Townsend seek recovery from GEICO, this, too, is unconvincing. At oral argument to the superior court Hahn's attorney conceded that to "chas[e] the person with no ability to pay" was a bad idea and that it was better to seek UIM benefits during settlement negotiations.[22]

Third, the fact that Hahn had not exhausted the bodily injury and property damage liability limits did not make a declaratory judgment inappropriate. As the superior court noted, there was little doubt that Townsend was exposed to potential liability in excess of the policy limits, making the question whether UIM coverage was available critical to the underlying dispute. Moreover, the only reason that the policy limits had not been used up was because Hahn had rejected them in settlement negotiations, by insisting that his release of tort claims against Townsend be dependent on UIM benefits. Given that Hahn had made UIM benefits central to the settlement negotiations and had represented that Townsend's personal liability was well over GEICO's policy limits, we conclude that a UIM claim was reasonably likely to mature. Therefore, the fact that Hahn had not yet technically exhausted Townsend's bodily injury

---

[22]     We also note here that — as discussed below in more detail — any UIM coverage for which Hahn might be eligible technically would not be excess liability insurance, but would be Hahn's personal insurance benefits as an insured under Townsend's policy, and would not reduce Townsend's exposure to liability. Thus, it is not clear that Townsend would have standing to seek UIM benefits on Hahn's behalf any more than he could have sought benefits for Hahn under Hahn's own Blue Cross policy.

and property damage limits was not an impediment to hearing the case as a declaratory judgment action.

This conclusion comports with our prior treatment of the "actual controversy" question in the declaratory judgment context, and with our jurisprudence on ripeness generally.  For example, in *Alaska Commercial Fishermen's Memorial in Juneau v. City & Borough of Juneau*, a nonprofit organization sought a declaratory judgment on whether the City of Juneau could construct a dock on submerged lands before it had a final decision from the State transferring those submerged lands to the City.[23]  We noted that "the record [was] devoid of any credible assertion that the City intended to build on lands it did not own" and concluded that "the superior court did not abuse its discretion by refusing to grant a declaratory judgment on a purely hypothetical (and seemingly unlikely) set of facts."[24]  Unlike *Alaska Commercial Fishermen's Memorial*, where the declaratory judgment would have been issued in a purely hypothetical context, the question whether UIM coverage is available here is at the heart of an actual dispute holding up settlement negotiations arising out of an actual car accident involving injures well in excess of primary coverage limits.

In *Metcalfe v. State* we held that, although the plaintiff challenging the enforcement of 2005 legislation affecting the Public Employees' Retirement System (PERS) no longer had a job with PERS benefits, his "declaratory judgment claim was ripe for decision" because "[he] and others in his position need[ed] to know their PERS status to make decisions about pursuing employment opportunities with the State" and substantial case law guided the court's adjudication of the plaintiff's constitutional

---

[23]     357 P.3d 1172, 1174 (Alaska 2015).

[24]     *Id.* at 1175-76.

challenge to the legislation.[25]  Just like the plaintiff in *Metcalfe*, the parties here needed to know whether UIM coverage was available to make decisions about how to progress in settlement negotiations and resolve Hahn's tort action, despite the absence of any formal claim to UIM benefits.

When determining whether a case is ripe for decision, we also " 'examine the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration' in an effort to 'balance[] the need for decision against the risks of decision.' "[26]  In this situation, both the fitness of the issues for judicial decision and the hardship to the parties caused by withholding court consideration favor hearing the case.  The issue here is a legal question of contract interpretation framed by largely undisputed facts.  Legal questions are more likely to be ripe[27] and, as in *Metcalfe*, can be guided by "substantial case law."[28]  The court need not wait for further factual development in order to decide this issue.

And as the superior court noted, the hardship visited on the parties by refraining from deciding this issue militates in favor of issuing a declaratory judgment. Hahn made the availability of UIM coverage central to settlement negotiations arising out of the car accident, Townsend asked GEICO to tender UIM benefits, and GEICO denied there was a factual or legal basis for making this type of benefit available in this

---

[25]     382 P.3d 1168, 1177 (Alaska 2016).

[26]     *Jacko v. State, Pebble Ltd. P'ship*, 353 P.3d 337, 340 (Alaska 2015) (alteration in original) (quoting *State v. ACLU of Alaska*, 204 P.3d 364, 369 (Alaska 2009)).

[27]     *ACLU of Alaska*, 204 P.3d at 368.

[28]     *Metcalfe*, 382 P.3d at 1177.

-16-                                        7242

context. Refusing to answer the UIM benefits question would thus cause the parties hardship.

Finally, Hahn suggests that the real reason GEICO asked for declaratory judgment was to avoid a potential bad faith claim by Townsend for failing to tender UIM benefits in settlement negotiations pursuant to our decision in *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*.[29] He suggests that this means the dispute in this case is solely between GEICO and Townsend. But as we explain in further detail below, Townsend would not have any viable claims against GEICO pertaining to Hahn's potential UIM coverage, as any such coverage would be Hahn's own coverage as an insured under the policy and would have no impact on Townsend's liability.[30]

Because a UIM claim was reasonably likely to mature, the superior court was faced with an actual controversy that was ripe for adjudication, and the court had subject matter jurisdiction to decide the declaratory judgment action on its merits. "We have explained that declaratory judgments are rendered to clarify and settle legal relations, and to 'terminate and afford relief from the uncertainty, insecurity, and

---

[29]    828 P.2d 745, 768 (Alaska 1992) ( "[W]here an adverse verdict in excess of policy limits is likely, an insurance company has the duty to determine 'the amount of a money judgment which might be rendered against its insured,' and 'to tender in settlement that portion of the projected money judgment which [it] contractually agreed to pay.' " (quoting *Schultz v. Travelers Indem. Co.*, 754 P.2d 265 (Alaska 1988) (per curiam))), *superseded by statute on other grounds as recognized in Petrolane Inc. v. Robles*, 154 P.3d 1014, 1019-20 (Alaska 2007).

[30]    As the policyholder, Townsend could theoretically have brought a breach of contract claim against GEICO, but for the reasons stated, he would have no damages.

controversy giving rise to the proceeding.' "[31]  The superior court accomplished these goals by issuing its declaratory judgment, and did not abuse its discretion in doing so.

**B.    The Superior Court Did Not Err In Granting Summary Judgment To GEICO Because Hahn Did Not Occupy Townsend's Vehicle At The Time Of The Accident And Thus Was Not Insured Under The Policy.**

Under Alaska Civil Rule 56, the court may grant summary judgment to a party where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[32]  Here, taking the facts in the light most favorable to Hahn as the non-moving party, and based on its interpretation of the policy, the superior court concluded that Hahn was not "occupying" Townsend's vehicle and therefore was not an insured under the policy.  On that basis, the court granted summary judgment to GEICO.

Hahn contends that the court erred in its interpretation of the policy.  He argues that because the GEICO policy covers any person "occupying" the vehicle; because the policy's definition of the word "occupying" includes being "upon" the vehicle; and because "during the course of the collision" Hahn was "upon" Townsend's car as the term would be "understood in [its] ordinary and popular sense and as a man of average intelligence and experience would understand [it]";[33] he was occupying Townsend's car and was therefore an insured under the policy.  Furthermore, Hahn argues that there was no reason to look beyond the definition of "occupying" that is

---

**31**    *Lowell v. Hayes*, 117 P.3d 745, 755 (Alaska 2005) (quoting *Jefferson v. Asplund*, 458 P.2d 995, 997-98 (Alaska 1969)).

**32**    Alaska R. Civ. P. 56(c); *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014).

**33**    *Jarvis v. Aetna Cas. & Sur. Co.*, 633 P.2d 1359, 1363 (Alaska 1981) (quoting *Burr v. W. States Life Ins. Co.*, 296 P. 273, 276 (Cal. 1931)).

provided by the policy, and that the court's examination of case law interpreting similar provisions impermissibly "require[d] [Hahn] to . . . be aware of the interpretations of similar policy language made by other courts in other jurisdictions."[34] He asserts that the court's approach represented a "painstaking study of the policy provisions" that negated the reasonable expectations of the insured layperson,[35] and that through this erroneous approach the court impermissibly added to the policy an additional requirement that the insured have "some type of undefined 'prior relationship' with the [insured] vehicle."

"Contract interpretation is a question of law subject to de novo review."[36] "In addressing the proper interpretation of an insurance policy, we look to '(1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions.' "[37] "Because 'an insurance policy is a contract of adhesion,' we 'construe grants of coverage broadly and interpret exclusions narrowly.' "[38] Under Alaska law, "[i]nsurance contracts are interpreted 'in accordance with the reasonable expectations' of the insured. This is true even if 'painstaking study of the policy provisions would have negated those

---

[34]     *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 6 (Alaska 2004).

[35]     *Id.* (quoting *Safety Nat'l Cas. Corp. v. Pac. Emp'rs Ins. Co.*, 927 P.2d 748, 750 (Alaska 1996)).

[36]     *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014).

[37]     *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657-58 (Alaska 2011) (quoting *Teel*, 100 P.3d at 4).

[38]     *Id.* at 658 (footnote omitted) (first quoting *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000); then quoting *Teel*, 100 P.3d at 4).

expectations.' "[39] Insurance contracts are also construed according to "ordinary and customary usage."[40] Any ambiguous terms are to be construed in favor of the insured.[41] However, "ambiguities only exist when there are two or more reasonable interpretations of particular policy language."[42]

It is true that the term "upon" read in isolation could describe Hahn's position during the crash; his body was at least momentarily "upon" the hood, windshield, and perhaps roof of Townsend's car.[43] But as the superior court recognized, it would be error to "consider a single term in isolation." An interpretation of an insurance policy must also account for the language of other policy provisions, relevant extrinsic evidence, and case law interpreting similar provisions in order to determine

---

[39] *Safety Nat'l Cas. Corp.*, 927 P.2d at 750 (citations omitted) (first quoting *Fulton v. Lloyds & Inst. of London Underwriting Cos.*, 903 P.2d 1062, 1068 (Alaska 1995); then quoting *State v. Underwriters at Lloyds*, 755 P.2d 396, 400 (Alaska 1988)).

[40] *Houle*, 269 P.3d at 658 (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008)).

[41] *Id.*

[42] *Id.*

[43] In reviewing a grant of summary judgment, we read the record "in the light most favorable to the non-moving party[,] . . . making all reasonable inferences in its favor." *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)). In this case, however, the only disputed fact is whether Hahn "land[ed]" on Townsend's car or "bounced" on it, the former suggesting a longer period of contact with the vehicle. Even in the light most favorable to Hahn, it is clear that his contact with the car was fleeting, and Hahn does not appear to contest GEICO's suggestion, and the superior court's finding, that he fell to the ground shortly after contacting the car.

what the reasonable expectations of an insured would be.[44]  Hahn's argument that the court was required to stop after discovering that the word "occupying" was  defined as "upon" and apply its "ordinary and customary usage"[45] in isolation conflicts with the interpretive approach we have adopted.

The superior court properly sought to construe the word "upon" in context, relying on the doctrine of *noscitur a sociis*, which provides that "the meaning of a word . . . can be gleaned from the words associated with it."[46]  The most important contextual word for the superior court was understandably the word "occupying," for which "upon" provided a partial definition.  While the terms that serve to define "occupying" in the policy act to broaden the meaning we might give "occupying" in isolation — we do not usually think of someone "getting out of" a car, or standing next to a car,[47] as occupying it — the opposite is also true.  The word "occupying" must have some bearing on the meaning of the word that partially defines it:  "upon."  The superior court determined that "occupying," along with "getting in" and "getting out of," implied a prior relationship with the insured vehicle, thereby limiting the meaning of "upon."  Moreover, it concluded that a "reasonable insured would read all the terms of the policy in context, and [would] not assign undue weight to a single term."  We find no error in the superior court's reasoning.

---

[44]     *Houle*, 269 P.3d at 657-58 (quoting *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 6 (Alaska 2004).

[45]     *Id.* at 658 (quoting *Dowdy*, 192 P.3d at 998).

[46]     *Dawson v. State*, 264 P.3d 851, 858 (Alaska App. 2011).

[47]     *See State Farm Mut. Auto Ins. Co. v. Cookinham*, 604 A.2d 563, 564 (N.H. 1992) (claimant who was leaning against friend's insured vehicle and was seeking a ride at the time of the accident was occupying vehicle for purposes of UIM coverage).

Nor was it error for the court to consider case law interpreting similar provisions. Indeed, that is what we have instructed the superior court to do when interpreting insurance policies.[48] And in applying our independent judgment on appeal, we reach the same conclusion as the superior court: "[A] layperson would not reasonably expect a UIM policy to pay benefits as a result of brief, incidental contact with the insured vehicle." The fact that the majority of jurisdictions the superior court surveyed also require some form of prior relationship with the insured vehicle[49] adds further support for the conclusion that this rule is consistent with the reasonable expectations of the insured.

Hahn argues that the superior court should have followed the approach taken by the Sixth Circuit in *Bennett v. State Farm Mutual Automobile Insurance Co.*, which found coverage in circumstances similar to those in this case.[50] The *Bennett* court held that a claimant was an occupant of an insured vehicle under a State Farm policy

---

[48]     *Houle*, 269 P.3d at 657-58 (quoting *Teel*, 100 P.3d at 4).

[49]     *See, e.g.*, *Dawes v. First Ins. Co. of Haw.*, 883 P.2d 38, 54 (Haw. 1994) (requiring the person seeking coverage to have been an actual passenger in the insured vehicle during the chain of events resulting in injury); *Simpson v. U.S. Fid. & Guar. Co.*, 562 N.W.2d 627, 629 (Iowa 1997) (looking to "the relationship between the vehicle and the claimant . . . to decide whether a particular claimant was 'occupying' the insured vehicle at the time of his or her injury"); *Allstate Ins. Co. v. Graham*, 750 P.2d 1105, 1106 (N.M. 1988) (holding claimant "was simply not engaged in a transaction oriented to the use of the [covered auto] at the time of the accident"); *Gen. Accident Ins. Co. v. D'Alessandro*, 671 A.2d 1233, 1235 (R.I. 1996) (considering among other factors whether the injured party was "vehicle oriented" at the time of the accident, and whether the party was "engaged in a transaction essential to use of the vehicle at the time"); *Butzberger v. Foster*, 89 P.3d 689, 697 (Wash. 2004) (requiring a causal connection between the injury and the use of the vehicle, geographic proximity to the insured vehicle, and engagement in a transaction essential to the use of the vehicle).

[50]     731 F.3d 584, 585 (6th Cir. 2013).

when, after being hit by that vehicle, she was thrown onto its hood and sustained further injuries.[51] The policy defined "occupying" as "in, on, entering or alighting from," and the parties stipulated that the claimant was on the car.[52] The court reasoned that while the term "on" was in tension with the common usage of "occupant," State Farm had defined the term as it wished and "mark[ed] out its zone of coverage in primary colors."[53] Thus, the *Bennet* court found the claimant was entitled to coverage because she was "on" the car.[54] In so holding, the court rejected the decisions of courts that "have interpreted [the same] 'type' of provision" because it did "not construe contractual provisions in gross" and some of the cases cited were distinguishable from the case at hand.[55] But there are good reasons not to follow *Bennet*'s example. While the *Bennet* court recognized the tension between "occupying" and "on," in much the same way the superior court here recognized that a "tension exists in the policy language between the inclusive meaning of 'upon' and the more restrictive common understanding of 'occupying,' " the *Bennet* court elected to ignore that tension and read "on" in isolation. This was consistent with the Sixth Circuit's interpretation of the applicable Ohio law in that case, under which every insurance contract is interpreted "individually, according to its terms" and "in accordance with the same rules as other written contracts."[56]

---

[51]     *Id.*

[52]     *Id.*

[53]     *Id.* at 586.

[54]     *Id.*

[55]     *Id.* (quoting *Abercrombie & Fitch Co. v. Fed. Ins. Co.*, 370 Fed. App'x 563, 573 (6th Cir. 2010) (Kethledge, J., dissenting)).

[56]     *Id.* at 585 (quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 597
(continued...)

However, it directly conflicts with our approach to contractual interpretation under Alaska law, which looks broadly to the reasonable expectations of the insured.

Hahn separately argues that the term "upon" is ambiguous and must be resolved against the insurer or construed broadly as a provision of coverage.[57] But "ambiguities only exist when there are two or more reasonable interpretations of particular policy language,"[58] and the operative term of the insurance policy is not "upon" but "occupying." A reasonable insured would read the word "upon" as subordinate to the word "occupying" and conclude that a person who, like Hahn, fleetingly impacts an insured vehicle that hit him and then falls to the ground was not occupying the insured vehicle even though he may have been momentarily "upon" the car after he was struck. As the superior court also noted, adopting Hahn's approach would have the absurd result of making UIM coverage dependent on where a potential claimant happens to land after a crash.[59]

---

[56] (...continued)
N.E.2d 1096, 1102 (Ohio 1992)).

[57] *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 658 (Alaska 2011).

[58] *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008)).

[59] *See Rednour v. Hastings Mut. Ins. Co.*, 661 N.W.2d 562, 567 n.2 (Mich. 2003) ("[I]f there are two persons who are struck by a vehicle while in the vicinity of the insured vehicle, and if one is thrown into the insured vehicle while the other is thrown into a tree, a highway, a curb, or a fence, only the former would be covered by the policy as interpreted by the dissent. Such happenstance does not form a rational basis for understanding the scope of coverage under an insurance policy.").

Hahn is correct that we interpret ambiguous insurance policies in favor of the purported insured.[60] However, as we noted in *Dugan v. Atlanta Casualty Cos.*, "the mere fact that two parties to an insurance contract have differing subjective interpretations of that contract does not make it ambiguous."[61] Rather, in a situation where "reasonable interpretation favors the insurer, and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract."[62] As in *Dugan*, "[t]his is such a situation."[63] In short, we are not persuaded to adopt Hahn's view that his landing momentarily on Townsend's car after being struck by it made him an occupant of that vehicle for purposes of insurance coverage.

Finally, Hahn suggests that the superior court erred by reading into the policy an additional requirement that an injured person must have "some prior relationship" with the insured vehicle to be eligible for UIM coverage. He argues that will encourage insurers to deny coverage based on implied requirements, forcing laypersons to grapple with "subtle legal distinctions when interpreting the terms of an insurance contract," contrary to our holding in *Allstate Insurance Co. v. Teel*.[64] We disagree. The need for some prior relationship is not an additional requirement, but merely a part of the meaning of the word "occupying" as understood by the lay insured. It is undisputed that when Townsend's car struck Hahn, he was sitting on his motorcycle and was not yet upon the car. Hahn appears to obscure this fact by defining the relevant

---

[60] *Dugan v. Atlanta Cas. Cos.,*113 P.3d 652, 655 (Alaska 2005).

[61] *Id.*

[62] *Id.* (quoting *Ness v. Nat'l Indem. Co. of Neb.*, 247 F. Supp. 944, 947 (D. Alaska 1965)).

[63] *Id.*

[64] 100 P.3d 2, 6-7 (Alaska 2004).

time frame broadly, describing himself as occupying Townsend's car "[d]uring the course of the collision," or "during the crash and assault in which he was injured."[65] But it is not disputed that Hahn's only contact with Townsend's car was temporary and came entirely as a result of the collision. Under these circumstances, the lay insured would not understand Hahn to be "occupying" the car at all. Contrary to Hahn's suggestion, this is not a "subtle legal distinction," but mere common sense.

For the reasons outlined here, we find no error in the superior court's conclusion that Hahn was not "occupying" Townsend's car and therefore was not insured under the GEICO policy. Because this determination did not depend on any disputed factual issues but rather followed from the superior court applying its interpretation of the insurance policy to undisputed facts, the court did not err in concluding that GEICO was entitled to judgment as a matter of law and granting summary judgment in GEICO's favor.

## C. The Superior Court Did Not Err In Concluding That Townsend Was Not A Real Party In Interest And Dismissing The Third-Party Claims.

Hahn sought to join Townsend as a third-party defendant under Alaska Civil Rules 17 and 19 and brought the same negligence and intentional tort claims against Townsend in the declaratory judgment action as those he asserted in his separate

---

[65] Hahn also suggests that a person can occupy more than one vehicle at once so although he was occupying his motorcycle at the moment of impact, he could still have been occupying Townsend's vehicle during the accident. In support of this argument, he cites *Tata v. Nichols*, which concluded that a man who was jump-starting one vehicle with another and was crushed between them when an uninsured third vehicle collided with the disabled car was eligible for uninsured motorist coverage under the policies of both stopped vehicles because he was "occupying" both. 848 S.W.2d 649, 650-53 (Tenn. 1993). But unlike Hahn, the claimant in *Tata* was actively interacting with both vehicles *before* the collision. *Id.* Thus, *Tata* is not inconsistent with our conclusion here.

tort action against Townsend. GEICO moved to dismiss or sever the third-party claims under Alaska Civil Rule 21 on the grounds that the parties were improperly joined.[66]

The superior court found that joining Townsend as a "third-party defendant" was improper. The court explained that a third-party claim is governed by Civil Rule 14, which "permits a defendant to implead any third party 'who is or may be liable to [the defendant] for all or part of the plaintiff's claim' against him." The court reasoned that because GEICO sought only a declaratory judgment regarding its contractual obligations to Hahn, no other party could be liable to Hahn for GEICO's claims. The court proceeded to address whether joinder could be supported under Rules 17 or 19, which permit joinder of real parties in interest and indispensible or "necessary" parties, respectively. The court reasoned that "[u]nlike GEICO or Hahn, Townsend's interest [was] in disputing and minimizing his personal liability for Hahn's injuries," but concluded that the declaratory action would have no effect on this underlying liability. The court emphasized that the contractual relationship at issue in the declaratory judgment was between Hahn as the potential insured and GEICO, and that Townsend's presence in the case would not affect that contractual relationship. Because the court found that Townsend had only a collateral interest in the outcome, it concluded that he was neither a real party in interest nor a necessary party. The superior court also reasoned that allowing the third-party claims to go forward might lead to multiple and inconsistent legal obligations for Townsend because they duplicated the claims in Hahn's tort suit. The court therefore dismissed the third-party claims against Townsend.

---

[66] Alaska R. Civ. P. 21 ("Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.").

On appeal, Hahn challenges only the court's determination that Townsend was not a real party in interest under Rule 17.[67] He argues that Townsend "stood to directly benefit from the declaratory judgement action started by GEICO by having his personal liability to Chad Hahn reduced by $50,000" if the court concluded UIM coverage was available to Hahn.

Having considered Hahn's argument, we find no error in the superior court's conclusion. In this case, both GEICO and Hahn sought declaratory judgments as to the scope of Hahn's contractual rights against GEICO and GEICO's contractual obligations to Hahn. While Townsend is the policy holder and named insured under the GEICO policy, UIM coverage is not liability coverage for those injured by the policyholder; it is coverage for personal damages suffered by insured parties.[68] Hahn is the injured person who was purportedly occupying the insured vehicle; thus, only Hahn is potentially entitled to UIM benefits. Civil Rule 17 "has been consistently interpreted to mean that an action or claim for relief shall be prosecuted in the name of the party

---

[67] Rule 17 provides that "[e]very action shall be *prosecuted* in the name of the real party in interest." (Emphasis added.) As the language suggests, this rule is generally applied to determine the propriety of the plaintiff. *See* 6A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1543, at 482-83 (2010) (noting that "the question of who should or may be joined in the action must be determined under Rule 19 and Rule 20 rather than Rule 17(a)").

[68] "The idea underlying underinsured motorist coverage is that the insured purchases coverage to benefit herself in case she is injured by a motorist whose liability insurance is insufficient to cover her injuries. UIM coverage thus is meant to stand as supplemental liability insurance covering an underinsured motorist for the benefit of the insured." *State Farm Mut. Auto. Ins. Co. v. Wilson*, 199 P.3d 581, 584 (Alaska 2008). This is consistent with Townsend's GEICO policy, which describes UIM coverage as "protection for you and your passengers for injuries caused by uninsured, underinsured and hit-and-run motorists," in contrast to liability coverage, which it described as "your protection against claims from others."

who, by the substantive law, possesses the right sought to be enforced."[69] Here, Townsend has no clear right to enforce the UIM provision because he is not the insured in this context. Thus, the superior court did not err in determining that Townsend was not a real party in interest and dismissing Hahn's claims against him.

## V. CONCLUSION

We AFFIRM the superior court's decision in all respects.

---

[69] *Burns v. Anchorage Funeral Chapel*, 495 P.2d 70, 72 (Alaska 1972).